The People on the relation of The Board of Water Commissioners v. The Common Council of East Saginaw.

*Water commissioners: Bonds: Official duty: Interest: Parties.* The board of water commissioners of a city, who have, in pursuance of the act by virtue of which they were called into existence, issued bonds of the city which it is made their official duty to see are paid as they fall due, have an interest not common to all citizens, in the common council performing their duty in regard to raising funds to meet such payment.

*Bond-holders: Remedy: Water commissioners: Official duty.* And while it
is true the bond-holders have a remedy against the city in case the bonds
are not met at maturity, that would not justify the commissioners in
sitting quietly by, knowing that such bonds were maturing, and make
no efforts to provide funds to meet them.

*Cities: Common council: Municipal boards: Local taxation: Discretion.* The
query is suggested whether it is competent for the legislature to confer
upon boards created by it within cities the power to control the discre-
tion of the common council as to the amount of moneys to be raised for
local purposes, or to give them authority beyond that of mere agents or
assistants of the council.

*Common council: City taxes: Discretion.* As a general rule the common
council of a city should be allowed to determine what taxes ought to be
levied for city purposes, and there ought to be no interference with its
discretion by the courts except on the most imperative reasons.

*Bonds: Payment: Remedy: Mandamus.* The water commissioners in this
case having a remedy in their own hands to provide funds to meet the
bonds about maturing by issuing new bonds for that purpose, as they are
authorized to do, their application for *mandamus* to require the common
council to raise the money by taxation is denied.

*Mandamus: Discretionary writ.* The writ of *mandamus* is in most cases
discretionary, and where the respondents have acted in good faith, and
the question at issue is one more of policy than of right or power, and it
is not made to appear that any serious evils will result, the court may
justly exercise its discretion and abstain from interfering.

*Submitted on briefs November 3. Decided January 5.*

Application for *Mandamus.*

*Wisner & Draper,* for relators.

*Timothy E. Tarsney,* for respondents.

MARSTON, J:

The legislature in 1873 passed an act to incorporate a
board of water commissioners for the city of East Saginaw,
to supply the city with pure water, and to provide for the
completion and management of the East Saginaw water
works.

The first section of this act authorized and empowered
and made it the duty of the common council of East Sagi-
naw to appoint five persons, residents and freeholders of the·
city, who, and their successors, should be a body corporate
with certain powers, and amongst others, to purchase, hold
and convey personal and real estate, to make by-laws, ordi-

nances, rules and regulations, and do all legal acts that
might be necessary and proper to carry out the. effect, intent
and objects of the act.

The fourth section gave the board power to borrow, from
time to time, and for such time as they should deem expe-
dient, a sum of money not exceeding three hundred thousand
dollars, for the purpose of constructing water-works, upon the
credit of the said city of East Saginaw, with authority to issue
bonds pledging the faith and credit of said city for the pay-
ment of the principal and interest thereon, which bonds
were to be signed by the board, or a majority of them, and
by the mayor of said city, and payable at a period not ex-
ceeding twenty years from their date. The amount author-
ized to be issued was afterwards increased to three hundred
and fifty thousand dollars.

Section twenty-two gave said commissioners the custody
and control of all money, revenues, accounts and bonds
belonging to said board, with authority to deposit the same
as they might deem for the best interests of the city, also
authorized them to appoint a treasurer, who should pay out
such moneys as the board should order.

Section twenty-three made it the duty of said board,
whenever their receipts from water rates or other sources
accumulated to a certain amount, with the aid of the mayor
of the city, to invest the same in stocks, or upon real es-
tate, such investment to be made in the name of said board,
and in such manner as to make the same available for the
payment of the principal and interest of such bonds; and
then provided as follows: "It shall be the duty of said
commissioners to pay the interest on such bonds, and, as
fast as such surplus fund will permit, also the principal, as
the bonds become due, as funds for such purpose shall from
time to time accumulate. The said commissioners may,
when they have funds for that purpose, purchase the bonds
so issued as aforesaid, whether the same shall have become
due or not; and in case the said commissioners shall at any

time not have funds on hand sufficient to meet any of the said bonds at the time when they shall become due, they shall have the right to issue new bonds for such amount as they shall deem expedient, in the place of bonds so becoming due as aforesaid."

Section twenty-four: "It shall be the duty of said commissioners, at least ten days before the time fixed by the charter or ordinances of said city for assessing city taxes, to make a special report to the common council of said city what, if any, sum will be needed by said commissioners, over and above the revenue of said board, to meet the payment of interest or principal of the bonds issued as aforesaid; and it shall be the duty of the common council to raise said amount by special tax, in the same manner as general taxes, to be designated a water tax; and the said amount shall be paid over to said board by the treasurer of said city, weekly, as collections are made."

The petition and answer assume that under and in pursuance of this act the common council of East Saginaw did appoint five commissioners, who qualified and entered upon the discharge of their duties as provided in said act. The petition sets forth, that under and by virtue of the authority in them vested by said act, the said board have, from time to time, for the purpose of constructing water-works for said city, borrowed money upon the credit of said city, and have duly and regularly, in the manner provided in said act, issued bonds to the amount of three hundred and fifty thousand dollars; that there will fall due November 1, 1875, fourteen thousand dollars, and May 1, 1876, fourteen thousand dollars, interest upon said bonds, and on the first day of May, 1876, fifty-one thousand five hundred dollars principal; that there is not, and will not, at the maturity of said bonds, be funds on hand to meet and pay the same unless it is raised by a special tax as in said act provided; that ten days previous to the time fixed by the charter of said city for assessing taxes, a special report was made

to the common council, that the sum needed by said commissioners, viz. : To pay interest on three hundred and fifty thousand dollars, twenty-eight thousand dollars; to pay water bonds which fall due May 1, 1876, fifty-one thousand five hundred dollars; that the common council directed the sum necessary to pay the interest to be raised, but refused to raise the amount necessary to pay the bonds falling due May 1, 1876. The issuing of these bonds, and the fact that interest and principal will fall due at the time above stated, and that the common council refuse to raise money to meet the principal, are admitted by the answer.

In the brief submitted on the part of the respondents they insist, that the relators have no interest in this matter not common to other citizens, except to maintain the credit of the board, and that the application should therefore have been upon the relation of the attorney general; *second,* that there is another remedy in this case : the bondholders may have an action against the city; and a *mandamus* will not, therefore, be granted.

It is very clear that the relators have an interest in this case which is not common either to the citizens of the state or of East Saginaw. It is made the official duty of relators, as commissioners, to pay both the principal and interest on the bonds issued by them as the same become due, and while it is true that the bond-holders would have a remedy against the city in case the bonds were not paid at maturity, yet that would not justify the relators in sitting quietly by, knowing that these bonds were maturing, and yet make no effort whatever to provide funds to meet them. Their interest did not cease upon the issuing and negotiating of these bonds, nor even upon presenting to the council a report showing the amount of money necessary to be raised to pay them. It still remained their duty to take such other and further measures as might be necessary to accomplish the end sought, *i. e.,* funds to meet the bonds at maturity. The case of *State v. Haben, 22 Wis., 660,* cited by coun-

sel for respondents, is not in point.   Had it been the duty of the city treasurer to pay these bonds upon the order of the board of water commissioners, and had such an order been given the bond-holders, and payment thereon refused, the cases would have been parallel.   In the case of *The State v. The City of Cincinnati, 19 Ohio, 178,* under circumstances more closely resembling those in the present case, the writ was granted.

It is insisted in the third place, that the act in question, and particularly *section 24,* if construed to be mandatory, confers upon the board powers which cannot be tolerated under our system of local government; that such boards do not directly represent the people, but are subordinate to the will of the council; that this must necessarily be so for the reason that the most disastrous consequences might follow from permitting several boards to dictate to the council the amount of taxes they should raise in each year; that while the legislature may interfere in the affairs of a municipality, in so far as the latter acts as the agent of the state, yet local matters must be left to the people of the city to regulate as they see fit.

How far it is competent to subject the authority of the common council of a city, as to the amount of taxes necessary to be raised for city purposes, to the control of boards. which do not represent a different municipality co-existing within the same city, as a school-district, is a very serious question. ·   That such boards may be provided for, as the agents or assistants of the common council, is beyond question.   But if they can be given powers beyond this, if they can control the common council in its discretion, as to the amount of moneys to be raised for local purposes, and compel it to raise such sum as they may deem necessary, it is very evident that the power and authority of the council may be so abridged that it will become the mere ministerial agent of such boards, having no discretion whatever as to the amount of taxes to be raised.   Upon this question we

do not at present desire or intend to express any opinion, preferring to leave it until it becomes necessary to deal with it.

As a general rule, the common council of a city should be allowed to determine what taxes ought to be levied for city purposes, and there ought to be no interference by the courts, with its discretion, except on the most imperative reasons. We are not satisfied that such reasons exist in this case. The relators, under *section 23*, have power to issue bonds to meet payments becoming due in 1876, and it does not appear that if a new issue is made they cannot be negotiated; indeed, we may infer the contrary. The relators therefore have a remedy in their own hands. They will not necessarily be without funds to meet the bonds falling due in 1876, so that it does not appear that any mischief will follow from a refusal to grant the writ.

The writ of *mandamus* is, in most cases, discretionary, and where, as in this case, the common council have apparently acted in good faith, and have refused upon the ground that the taxes to be raised for that year were already too high, so that the question as between the common council and the relators was one more of policy than right or power, and as there are no evils appearing or being threatened, we are of opinion we may justly exercise our discretion and abstain from interfering.

We cannot undertake to correct all differences of opinion, or, indeed, wrongs, by this writ, but only such as appear so serious as to demand interference.

The writ must be denied, but without costs to either party.

The other Justices concurred.