KINNANE *v.* AUDITOR GENERAL.

MANDAMUS—INDUSTRIAL ACCIDENT BOARD—STATUTES—APPROPRIA-
TIONS—EXPENSES.

> The appropriation of $25,000 for an industrial accident
> board, by Act No. 10, Extra Session 1912, was intended
> as a limitation upon the entire expenses of the depart-
> ment, including rent, stationery, printing, and salaries,
> and the auditor general will not be compelled, by man-
> damus, to charge to the general fund of the State ex-
> penses of equipment, rent, etc.: it was the clear purpose
> of the legislature to limit the expenditures of the board
> for legal purposes to the sum appropriated. Const. art.
> 10, § 16.

Mandamus by John E. Kinnane, James A. Kennedy,
and Ora E. Reaves, members of the industrial accident
board, to compel Oramel B. Fuller, auditor general,
to allow and pay expenses of said board out of the
general fund of the State, and to cease charging such
expenses to the appropriation of $25,000 made by the
legislature of 1912. Submitted June 18, 1913. (Cal-
endar No. 25,749.) Writ denied July 9, 1913.

*John E. Kinnane, in pro. per.,* for relators.

*Grant Fellows,* Attorney General, for respondent.

BROOKE, J. This is an application by relators for
a writ of mandamus against respondent—

"Directing and commanding him to remove the
limitation of $25,000 aforesaid to the expenses and
cost of maintenance and operation of the industrial
accident department of the State of Michigan, and to
charge such expenses to the general fund of the State;
or, in case the court should find that such limitation
was proper, commanding said auditor general to
charge to the general fund of the State the cost and
expense for the rent of the offices of said industrial

accident board, the furnishing and equipping of same, and the supplies therefor, and to deduct said last mentioned items from the amounts now charged against said $25,000."

The title of the act (Act No. 10, Pub. Acts 1912, Extra Session) under which the board, of which relators are members, was created, is as follows:

"An act to promote the welfare of the people of this State, relating to the liability of employers for injuries or death sustained by their employees, providing compensation for the accidental injury to or death of employees and methods for the payment of the same, establishing an industrial accident board, defining its powers, providing for a review of its awards, making an appropriation to carry out the provisions of this act, and restricting the right to compensation or damages in such cases to such as are provided by this act."

Section 7, pt. 6, of the act provides:

"To carry out the provisions of this act there is hereby appropriated for the expenses of the industrial accident board for the fiscal year ending June thirtieth, nineteen hundred thirteen and annually thereafter, the sum of twenty-five thousand dollars. The auditor general shall add to and incorporate into the State tax the sum of twenty-five thousand dollars annually, which said sum shall be included in the State taxes apportioned by the auditor general on all taxable property of the State, to be levied, assessed and collected as other State taxes, and when so assessed and collected to be paid into the general fund to reimburse said fund for the appropriation made by this act."

The act went into effect on September 1, 1912, so that relators had under its terms the sum of $25,000 for the first 10 months of operation. The petition avers that early in September, 1912, it became apparent to relators that an expenditure beyond that sum would be necessary before July 1, 1913. There being no available offices in the capitol, rooms were rented

in a nearby building. The lease was made by the board of State auditors, and the rooms were furnished upon requisition signed by relators or their secretary. The vouchers for these expenditures were duly audited and paid, but were by the respondent charged against the appropriation of $25,000 credited to relators as a board. It was early contended by relators that, in charging against the fund the cost of rent and furniture, respondent had not properly interpreted the law. Being dissatisfied with respondent's interpretation, relators sought, and on October 9, 1912, obtained, an opinion from the attorney general upon the question. That official held that all expenses of the board, including offices, office fixtures, stationery, and printing, were properly chargeable to the appropriation of $25,000.

The legislature met in regular session on January 1, 1913, and though the relators secured the passage of an amendment to the act whereby the annual appropriation was increased from $25,000 to $40,000, commencing July 1, 1913, no attempt seems to have been made to secure a deficiency appropriation to cover the first 10 months of operation, though, as set out in paragraph 6 of relators' petition, it was in September, 1912, known to them that "it would not be possible to carry on the work of the board within the limits of $25,000 a year."

Relators base their right to relief upon the language of section 2, pt. 3, of the act which follows:

"The board shall be provided with an office in the capitol, or in some other suitable building in the city of Lansing, in which its records shall be kept, and it shall also be provided with necessary office furniture, stationery and other supplies. It shall provide itself with a seal for the authentication of its orders, awards and proceedings, upon which shall be inscribed the words 'Industrial Accident Board—Michigan—Seal.' It shall employ such assistants and clerical help as it may deem necessary and fix the compensation of all

persons so employed: *Provided,* that the average compensation paid to such employees shall not exceed one thousand dollars *per annum* for each person employed, and all such clerical assistants shall be subject to existing laws regulating the grading and compensation of department clerks. The members of the board and its assistants shall be entitled to receive from the State their actual and necessary expenses while traveling on the business of the board; but such expenses shall be sworn to by the person who incurred the same, and be approved by the chairman of the board before payment is made.

"All such salaries and expenses when audited and allowed by the board of State auditors, shall be paid by the State treasurer out of the general fund, upon warrant of the auditor general."

It is their contention that by the use of the foregoing language the legislature intended to make and did make an appropriation covering the cost of rent, necessary office furniture, stationery, and other supplies, said appropriation being outside of and in addition to the $25,000 provided for in section 7, pt. 6, quoted *supra.* Such a construction is, in our opinion, clearly unwarranted. Relators' petition shows that the rent for their offices amounts to $1,200 per annum, that they have expended for furniture some $3,000, and that the cost of stationery and printing is about $3,500 per annum. It is scarcely conceivable that the legislature intended to add to the sum specifically provided this additional amount, an amount more than 25 per cent. in excess of the appropriation itself.

The Constitution (article 10, § 16) provides:

"No money shall be paid out of the State treasury except in pursuance of appropriations made by law."

It is undoubtedly true as stated by relators that no particular form of language is necessary to constitute an appropriation. The cases cited to this proposition by relators are doubtless good law, but they have no application to the case under consideration. Here the

legislature has not spoken by indirection, but has very specifically defined the *amount* appropriated and the *purposes* to which the appropriation is to be devoted. The amount is $25,000 and the purpose is *"to carry out the provisions of this act."* If any doubt were possible, it is at once dispelled by reading the closing sentence of section 7, pt. 6:

"The auditor general shall add to and incorporate into the State tax the sum of twenty-five thousand dollars annually, which said sum shall be included in the State taxes apportioned by the auditor general on all taxable property of the State, to be levied, assessed and collected as other State taxes, and when so assessed and collected to be paid into the general fund to reimburse said fund for the appropriation made by this act."

The act provides that all payments shall be made from the general fund, and that fund is to be reimbursed by the levy, collection, and payment into it of $25,000. To reimburse it for what? *"For the appropriation made by this act."* If relators' contention is sound, the tax levied and paid into the fund would only partially reimburse it. We think it entirely clear that the legislature sought to and by appropriate language did limit the expenditure which relators, as a board, could make for any legal purpose to the sum of $25,000.

The contention of relators that the sum appropriated was for *"expenses"* as distinguished from *"salaries"* is wholly untenable. While no particular words are essential in making an appropriation, the will of the law-makng body must be clear and apparent. Nothing should be taken by intendment when, as in the case at bar, the legislature has in apt terms covered the question.

The writ is denied.

STEERE, C. J., and MOORE, MCALVAY, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.