CIVIL SERVICE COMMISSION v. AUDITOR GENERAL.

1. CONSTITUTIONAL LAW—APPROPRIATIONS—LEGISLATURE.

   Provision of State Constitution that no money shall be paid out of the State treasury except in pursuance of appropriations made by law does not restrict appropriations to legislative enactments but there can be constitutional appropriation apart from any action by the legislature (Const. 1908, art. 10, § 16).

2. SAME—APPROPRIATIONS—CIVIL SERVICE—LEGISLATURE.

   Provision of civil service amendment to the Constitution for appropriation of the sum of one per cent. of the aggregate annual payroll of the State service for the preceding fiscal year constitutes a continuing appropriation made by law for which legislative initiation is not required (Const. 1908, art. 6, § 22; art. 10, § 16).

3. SAME—OFFICERS—SALARIES—LEGISLATURE.

   Rule that where the Constitution creates an office and declares that the officer shall receive his salary amounts to an appropriation and requires no legislative action in order to enforce payment of such salary is limited to officers whose salaries are fixed by the Constitution and not to those whose compensation is left to the discretion of the legislature.

4. SAME—CIVIL SERVICE—LEGISLATURE—APPROPRIATIONS.

   Authorization in civil service amendment to Constitution to commission therein created to fix rates of compensation for all classes of positions in the State civil service and approve or disapprove disbursements for all personal services is not sufficiently fixed to be a constitutional appropriation as it does leave the sum to be appropriated discretionary with the legislature although it does not leave the amount of the salaries to the discretion of the legislature (Const. 1908, art. 6, § 22).

5. STATUTES—OFFICERS—SALARY—APPROPRIATIONS.

   An act which creates an office and fixes a definite salary by law carries an appropriation to pay the salary from time to time.

6. SAME—OFFICERS—MAXIMUM FOR SALARY—APPROPRIATIONS.

   An act which merely authorizes the governor and other officials to fix the salaries of subordinate officials not exceeding a fixed

maximum does not carry an appropriation authorizing payment from the State treasury.

7. CONSTITUTIONAL LAW—CONSTRUCTION OF AMENDMENTS.

The language of a constitutional amendment should be read in connection with the known condition of affairs out of which the occasion for its adoption may have arisen, and then construed so far as is reasonably possible, if there be therein any doubtful expressions, in a way to forward the known purpose or object for which the amendment was adopted.

8. SAME—CREATION OF DEPARTMENTS OF GOVERNMENT.

The people, by amendment of the Constitution, may create a department of government in addition to the executive, legislative and judicial departments (Const. 1908, art. 4).

9. SAME—LEGISLATURE—PUBLIC TREASURY.

The legislature has the right to control the public treasury.

10. SAME—SEPARATION OF POWERS.

The historical and constitutional division of the powers of government forbids the extension, otherwise than by explicit language or necessary implication, of the powers of one department to another (Const. 1908, art. 4).

11. SAME—SEPARATION OF POWERS—CONSTRUCTION OF AMENDMENTS.

If there is any ambiguity in the wording of an amendment to the Constitution, the doubt should be resolved in favor of the traditional separation of governmental powers.

12. SAME—CIVIL SERVICE AMENDMENT.

The civil service amendment to the Constitution does not alter or abrogate any specific provision of the Constitution (Const. 1908, art. 6, § 22).

13. SAME—CIVIL SERVICE—EXECUTIVE—APPROPRIATIONS.

The executive authority to fix rates of compensation for employees, lodged in various appointing officers prior to the adoption of the civil service amendment of the Constitution, was thereby lodged in the civil service commission but the appropriation to meet the pay roll must be initiated by the legislature (Const. 1908, art. 6, § 22).

14. SAME—LEGISLATURE—APPROPRIATIONS—CONDITIONS.

While an appropriation to meet the pay roll of the various State departments must be initiated by the legislature and the legislature may attach thereto certain conditions, it may not attach thereto unconstitutional conditions.

15. STATUTES—CONSTRUCTION—CONSTITUTIONAL LAW.

The legislature may not do indirectly what it is prohibited from doing directly; hence, in construing a statute which is alleged

to be unconstitutional, it should be scrutinized very carefully, and no matter what its form, if its true purpose and probable effect is to violate a constitutional provision, it will be held void.

16. CONSTITUTIONAL LAW—LEGISLATURE—CIVIL SERVICE COMMISSION —CONTROL OF SALARIES.

Section of deficiency appropriation act by which the legislature sought to restrict the granting of increases in compensation to civil service employees receiving more than a stated amount constituted a usurpation of power vested in the civil service commission by constitutional amendment and is void (Const. 1908, art. 6, § 22; Act No. 22, § 3, Pub. Acts 1942 [2d Ex. Sess.]).

17. STATUTES—SEVERING CLAUSE.

All portions of an appropriation act would be valid except that part held unconstitutional where the statute contains a severing clause (Act No. 22, § 3, Pub. Acts 1942 [2d Ex. Sess.]).

18. MANDAMUS—PARTIES—OFFICERS.

When the action of the legislature and one State officer is a challenge to the power of another State board or officer, such latter board or officer is a proper party in mandamus proceeding to determine the issue presented.

19. CONSTITUTIONAL LAW — LEGISLATURE — APPROPRIATIONS — CIVIL SERVICE—SALARIES.

It is within the power of the legislature to fix the amount it will appropriate for personal services in any State department or agency but the power to fix rates of compensation for all classes of civil service positions is vested in the civil service commission (Const. 1908, art. 6, § 22).

20. MANDAMUS—QUESTIONS REVIEWABLE—LEGISLATURE—APPROPRIA- TIONS—OVERDRAFTS—CIVIL SERVICE.

In mandamus proceeding to determine whether or not the legislature has the power to restrict the expenditure of public funds for personal service in a State department where it is concluded power to appropriate funds was vested in the legislature and power to fix rates for compensation for all classes of civil service positions was vested in the civil service commission and commission has increased rate of pay for certain positions it is assumed that such increase would not overdraw appropriation already made for personal services and question of whether or not an increase in rate of pay granted by the commission would be valid if it resulted in exceeding appropriation made is not decided (Const. 1908, art. 6, § 22; Act No. 22, § 3, Pub. Acts 1942 [2d Ex. Sess.]).

21. COSTS—MANDAMUS—PUBLIC QUESTION—CONSTRUCTION OF CON-
    STITUTION AND STATUTES.

    No costs are awarded in mandamus proceeding brought by the
    civil service commission against the auditor general in which
    are involved the construction of provisions of the Constitution
    and validity of a provision of a deficiency appropriation act,
    and such matter pertains wholly to the administration of pub-
    lic affairs (Const. 1908, art. 4; art. 6, § 22; art. 10, § 16;
    Act No. 22, § 3, Pub. Acts 1942 [2d Ex. Sess.]).

Mandamus by the Civil Service Commission of the
State of Michigan and George J. Burke, Alex J.
Groesbeck, William Palmer, and John C. Beukema,
members thereof, to compel Vernon J. Brown, Audi-
tor General, to pay certain salaries. Submitted
June 10, 1942. (Calendar No. 42,009.) Writ
granted September 8, 1942.

*Dean W. Kelley* and *Robert H. Dunn,* for plain-
tiffs.

*Herbert J. Rushton,* Attorney General, *Edmund E.
Shepherd,* Solicitor General, and *Daniel J. O'Hara,*
Assistant Attorney General, for defendant.

CHANDLER, C. J.  The plaintiffs, who are the civil
service commission of the State of Michigan and the
four individual members thereof, who are suing in
their official capacity, ask that a writ of mandamus be
granted against the auditor general of this State
requiring him to pay in full certain disbursements
which they have approved.  The answer of the audi-
tor general shows for cause a lack of authority on
his part, by reason of certain legislation, to draw
and issue his warrants on the State treasury for
the full sums approved by the commission.

The commission was created by a constitutional amendment, known as the "civil service amendment," adopted by the electorate in November, 1940, and pursuant to its terms became effective January 1, 1941. It is known as article 6, § 22, of the Constitution of 1908, and the pertinent parts are as follows:

"There is hereby created a nonsalaried civil service commission to consist of four persons.   *   *   * This commission shall supersede all existing State personnel agencies and succeed to their appropriations, records, supplies, equipment, and other property.

"The commission shall classify all positions in the State civil service according to their respective duties and responsibilities, fix rates of compensation for all classes of positions, approve or disapprove disbursements for all personal services.   *   *   *

"To enable the commission to execute these powers, the legislature shall appropriate for the six months' period ending June 30, 1941, a sum not less than one-half of one per cent., and for each and every subsequent fiscal year, a sum not less than one per cent., of the aggregate annual payroll of the State service for the preceding fiscal year as certified to by the commission.

"After August 1, 1941, no payment for personal services shall be made or authorized until the provisions of this amendment have been complied with in every particular."

In pursuance of the amendment, a classification plan and compensation schedule was adopted by the commission on July 1, 1941, in which, *inter alia,* provision was made for increases of compensation with respect to certain positions in the State civil service affecting especially certain employees thereof whose positions require technical knowledge, skill and experience.

By Act No. 22, Pub. Acts 1942 (2d Ex. Sess.), appropriations were made for deficiencies and supplemental appropriations were made for the payment of personal services for certain State institutions, departments, commissions and boards, for the fiscal year ending June 30, 1942, and for the fiscal year ending June 30, 1943. This act includes the following provision and limitation:

"Sec. 3. On and after the effective date of this act it shall not be competent for the auditor general to issue his warrant for any salary or wage for any State employee in any State department, board, institution, commission, or other State agency for which deficiency appropriations are made in this act if such salary or wage includes any increase beyond the salary or wage existing at July 1, 1941, for the position occupied by such employee on or after the effective date of this act: *Provided, however*, That this section shall not be applicable to such increases as have been specifically provided for by the legislature, or to any salary or wage equivalent to $195 per month or less."

In conformance with the foregoing provision, the auditor general has refused to issue payroll warrants to cover the compensation of the approximately 75 State employees whose compensation increases were ordered and certified by the civil service commission, the employees affected being those for whom the commission fixed compensation in excess of $195 per month.

The issues as presented by counsel are:

1. Is a legislative appropriation necessary, or does the setting of compensation rates by the commission automatically act as an appropriation which does not require legislative initiation?

2. If legislative initiation of appropriations for personal services is necessary, is the restriction con-

tained in section three of the aforesaid deficiency bill constitutional?

To these issues a third has been suggested from the bench.

3.   Is the commission a proper party plaintiff to request mandamus proceedings for the benefit of the employees?

Because we determine that under certain circumstances the commission is a proper party to petition for a writ of mandamus, we shall discuss the first two issues, and then give our reasons for our answer to the third question.

I.   Article 10, § 16, Mich. Const. of 1908, reads, "No money shall be paid out of the State treasury except in pursuance of appropriations made by law." It is agreed that the weight of authority holds this phrase does not restrict appropriations to legislative enactments, but that there can be a constitutional appropriation apart from any action by the legislature.   Further, defendant seems to concede that the provision in the amendment for the sum of one per cent. of the aggregate annual payroll of the State service for the preceding fiscal year constitutes a continuing appropriation "made by law," for which legislative initiation is not required.

But the commission contends that the authorization to "fix rates of compensation for all classes of positions, approve or disapprove disbursements for all personal services," is also a continuing appropriation and relies on *Thomas* v. *Owens* (1853), 4 Md. 189, and subsequent cases in accord, including *Windes* v. *Frohmiller*, 38 Ariz. 557 (3 Pac. [2d] 275).   However, in both of the above-cited cases, and all cited cases in accord, the constitutional provision named a definite sum.   The Maryland Constitution names certain public officers "who shall receive an annual salary of $2,500," and the Arizona

Constitution stated, "shall receive $4,000 per annum."

The Arizona court said:

"We could rest the case here, but because of the fundamental principles involved we prefer to refer to the authorities, nearly all of which support our conclusion, which is that where the Constitution creates an office and declares that the officer shall receive his salary, that amounts to an appropriation, and no legislative action is necessary to enforce payment of such salary."

In 88 A. L. R. 1057, it is stated that, "This rule has been held subject to the limitation that it applies only to officers whose salaries are fixed by the Constitution, and not to those whose compensation is left to the discretion of the legislature." The authorization contained in the civil service amendment, although not leaving the amount of the salaries to the discretion of the legislature, does leave the sum to be appropriated discretionary with the legislature, and is not sufficiently fixed to be a constitutional appropriation. That which was said in *Re Opinion of the Justices,* 237 Ala. 377 (186 South. 731), is appropriate:

"It is the law that an act which creates an office and fixes a definite salary by law carries an appropriation to pay the salary from time to time. *Riggs* v. *Brewer,* 64 Ala. 282. This because the law fixes the amount which the treasurer shall pay from time to time, but the act in question merely authorizes the governor to fix salaries of certain officials, not exceeding a fixed maximum, and authorizes the department heads, with the approval of the governor, to fix the salaries of subordinate officers and employees in the respective departments.

"We are, therefore, of the opinion that the act is not within the rule of *Riggs* v. *Brewer, supra,* and does not carry an appropriation authorizing payment from State treasury."

However, the commission further contends then that this constitutional appropriation is implied, or should be implied, in the light of the history of the times which culminated in the passage of the civil service amendment, and the avowed purpose of the proponents of this amendment.

Without delving into the Michigan political history that led to the submission to the people of this amendment in 1940, it is sufficient to quote the following to understand the reasons, intent and motives of the citizens of this State in adopting the same:

"The unlimited authority of the chief executive in public office to appoint and remove all subordinate officials, which prevailed throughout this country during the first century of its existence, resulted in the general adoption of the "spoils system," under which public office was made to be the reward for political work, with the resulting evils of inefficiency, extravagance, the interruption of public business by place hunters, corruption of the electoral franchise, and political assessments." (10 Am. Jur. p. 921.)

With the above in mind, the following rule is appropriate:

"The language of a constitutional amendment should be read in connection with the known condition of affairs out of which the occasion for its adoption may have arisen, and then construed, if there be therein any doubtful expressions, in a way, so far

as is reasonably possible, to forward the known purpose or object for which the amendment was adopted." *Maxwell* v. *Dow*, 176 U. S. 581 (20 Sup. Ct. 448, 494, 44 L. Ed. 597).*

Relying on the above quotations, plaintiffs argue that in order to effectuate the aforementioned purpose, the people have created, in effect, a fourth department of government, supreme in its field as the executive, legislative and judicial are in theirs, subject, of course, to overlapping Constitutional limitations. It is not denied that the people may create by Constitution such a department, *State of Delaware, ex rel. Morford,* v. *Emerson,* 40 Del. 233 (8 Atl. [2d] 154, 156), but it is denied that this has been done by this amendment.

"The principle contended for is contrary to the genius of republican government. Under all constitutional governments recognizing three distinct and independent magistracies, the control of the purse strings of government is a legislative function. Indeed, it is the supreme legislative prerogative, indispensable to the independence and integrity of the legislature, and not to be surrendered or abridged, save by "the Constitution itself, without disturbing the balance of the system and endangering the liberties of the people. The right of the legislature to control the public treasury, to determine the sources from which the public revenues shall be derived and the objects upon which they shall be expended, to dictate the time, the manner, and the means both of . their collection and disbursement, is firmly and inexpugnably established in our political system. This supreme prerogative of the legislature, called in question by Charles I, was the issue upon which Parliament went to war with the king, with the result that ultimately the absolute control of Parliament over the public treasury was forever vindicated

---

* Quotation from syllabus of case as reported in 44 L. Ed.—Reporter.

as a fundamental principle of the British Constitution. The American commonwealths have fallen heirs to this great principle, and the prerogative in question passes to their legislatures without restriction or diminution, except as provided by their Constitutions, by the simple grant of the legislative power."

"In the light of this great dominating principle of republican government, we feel constrained to hold that the option of the statute in the instant case fell naturally and peculiarly within the sphere of legislative, rather than executive, discretion." *Colbert* v. *State,* 86 Miss. 769 (39 South. 65).

This cardinal principle has been stated by us in *Wood* v. *State Administrative Board,* 255 Mich. 220, 224:

"By Constitution (1908), art. 4, § 1, in harmony with American political theory, the State government is divided into the three historic departments, the legislative, executive, and judicial, and by section 2 it is declared that:

" 'No person belonging to one department shall exercise the powers properly belonging to another, except in the cases expressly provided in this Constitution.'

"This historical and constitutional division of the powers of government forbids the extension, otherwise than by explicit language or necessary implication, of the powers of one department to another."

We further said that if there is any ambiguity the doubt should be resolved in favor of the traditional separation of governmental powers. The following quotation from *C. F. Smith Co.* v. *Fitzgerald,* 270 Mich. 659, is here applicable:

"Under the Constitution the powers of government are divided into three departments, the legislative, executive and judicial, and no person belonging to one department shall exercise the powers properly belonging to another except in the cases

expressly provided in the Constitution. Constitution 1908, art. 4. The whole subject of finance and taxation is placed by the Constitution of this State under the control of the legislature. Constitution 1908, art. 10.''

To set up, even in effect, a fourth department of government contravenes article 4, § 1, of the Constitution which states, ''The powers of government are divided into three departments: the legislative, executive and judicial.'' To hold otherwise would be in conflict with those sections of the Constitution defining the legislative power. We have stated in *DeMaggio* v. *Attorney General,* 300 Mich. 251, ''The civil service amendment does not alter or abrogate any specific provision of the Constitution.''

Considering that the amendment was added to article 6, which is entitled ''Executive department,'' a truer picture of the place of the civil service commission in relation to our constitutional government can be gained, especially viewing that which was displaced by the amendment. Prior to the adoption of the amendment, each of the appointing authorities had power to ''fix rates of compensation'' for employees in his department and, having done so, he was then required by law to submit his estimated financial needs to the budget director (1 Comp. Laws 1929, § 212 *et seq.,* as amended [Stat. Ann. § 3.281 *et seq.,* as amended]) and seek appropriations from the legislature. If he failed in obtaining what he considered to be the necessary amount, the salaries could not be paid in full.

This executive authority clothed in certain Constitutional guarantees has been transferred to the civil service commission. The appropriation to meet the pay roll must be initiated by the legislature. As was said in *Myers* v. *State Treasurer,* 9 Cal. 341:

"There may arise exigencies, in the progress of human affairs, when the first moneys in the treasury would be required for more pressing emergencies, and when it would be absolutely necessary to delay the ordinary appropriations for salaries. We must trust to the good faith and integrity of all the departments. Power must be placed somewhere, and confidence reposed in someone."

See *Hovey* v. *Foster,* 118 Ind. 502 (21 N. E. 39).

II. Although the appropriation bill must be initiated by the legislature, the legislature cannot attach unconstitutional conditions. The amendment clearly states that the commission should "fix rates of compensation." In the spending of the money appropriated by the legislature, the commission's control is perhaps even greater than the regents of the university of this State. In *Board of Regents of the University of Michigan* v. *Auditor General,* 167 Mich. 444, although we said that conditions may be attached to appropriations for the university, we added that the regents may accept or reject such appropriations as they see fit. We indicated that legislative provisions as to accounting must be complied with, but "beyond that the money passes to the regents, and becomes the property of the university, to be expended under the exclusive direction of the regents."

The opinion of Justice McDONALD in *State Board of Agriculture* v. *Auditor General,* 226 Mich. 417, is informative. At page 425, he states:

"Clearly, in saying that the legislature can attach to an appropriation any condition which it may deem expedient and wise, the court had in mind only such a condition as the legislature had power to make. It did not mean that a condition could be imposed that would be an invasion of the constitutional rights and powers of the governing board

of the college. It did not mean to say that, in order
to avail itself of the money appropriated, the State
board of agriculture must turn over to the legis-
lature management and control of the college, or
of any of its activities. This logically leads us to
a consideration of the character of the condition
attached to the appropriation involved in the in-
stant case. Is it a condition that the legislature had
power to make?"

In *Caldwell* v. *Board of Regents of University of
Arizona,* 54 Ariz. 404 (96 Pac. [2d] 401), the court
said:

" 'The general appropriation bill is    *    *    *    as
the language implies, merely a setting apart of the
funds necessary for the use and maintenance of the
various departments of the State government al-
ready in existence and functioning.'    *    *    *
"The legislature may not do indirectly what it
is prohibited from doing directly.    *    *    *
" 'In light of its history and present setting' it
is not a mere incidental and necessary regulation of
the expenditure of the moneys appropriated.    *    *    *
"In construing a statute which is alleged to be
unconstitutional, it should be scrutinized very care-
fully, and no matter what its form, if its true pur-
pose and probable effect is to violate a constitu-
tional provision, it will be held void."

In view of the foregoing and in accordance with
the plain intent and meaning of the amendment, we
hold that section 3 of the appropriation bill is un-
constitutional and void, and shall be disregarded by
the auditor general. The interposition of this
section into the act in question, not impliedly but
in express terms, undertakes to usurp the authority
vested in the civil service commission by the con-
stitutional amendment to fix rates of compensation
of employees of the State who are under civil serv-

ice classification. As the act specifically contains a "severability clause," the remainder of the law is valid. See *State Board of Agriculture* v. *Auditor General, supra,* where the condition was held invalid, but the remainder of the appropriation was held good.

III. We have said that the commission may bring this petition for a writ of mandamus against the auditor general although the State employees are the principal beneficiaries. The action of the legislature and auditor general was a challenge to the commission's power, and there is ample precedent that in such instances the board or commission may be plaintiffs. As in *People, ex rel. Board of Water Commissioners,* v. *Common Council of East Saginaw,* 33 Mich. 164, we found that the commissioners had a special interest although the bondholders—here it would be the employees—had a remedy of their own. Although the writ was denied, the court specifically went into the question of whether the commissioners were proper persons to bring the petition.

Further, in *Board of Regents of the University of Michigan* v. *Auditor General, supra,* where the Regents of the University of Michigan approved certain expenditures to employees, the court granted the writ on the petition of the regents, who occupy a position similar to that of the members of the civil service commission, as can be seen by the court's statement at page 452:

"No money is paid out of the State treasury except on the warrant of the auditor general. In this case, as in many others, his duties are purely ministerial. As against the discretion of the regents in expenditure of the university funds he exercises no judicial functions. As to him, in the performance of his official duties, vouchers for ex-

penditures made within the amount of the appropriation when authorized by the board of regents and properly authenticated by the duly constituted officials, are, within the meaning of the law, 'for lawful purposes.' "

Other cases in which a board or commission were held to be the proper parties to petition for a writ of mandamus are, *State Board of Agriculture* v. *Auditor General, supra; Kinnane* v. *Auditor General,* 176 Mich. 340; *People, ex rel. Allen,* v. *Frink,* 32 Mich. 96.

We conclude that it is within the power of the legislature to fix the amount it will appropriate for personal services in any State department or agency; but by the 1940 Constitutional amendment the power is vested in the civil service commission to "fix rates of compensation for all classes of (civil service) positions." In our present decision we assume, though it does not too conclusively appear from the record, that the auditor general's issuance of the warrants will not result in overdrawing the appropriation already made for personal services in any of the State departments, boards, institutions, commissions, or other State agencies. That situation is not presented in the instant case.

A writ of mandamus will issue as prayed, but since the suit pertains wholly to the administration of public affairs, no costs will be awarded.

BOYLES, NORTH, STARR, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred. WIEST, J., did not sit.