In the Matter of ROBERT JONES et al., on Behalf of Themselves and All Others Similarly Situated, et al., Appellants, v HUGH L. CAREY, as Governor and Chief Executive Officer of the State of New York, et al., Respondents.

Third Department, December 30, 1976

*Roemer & Featherstonhaugh (Richard L. Burstein* of counsel), for appellants.

*Louis J. Lefkowitz, Attorney-General (William J. Kogan* and *Ruth Kessler Toch* of counsel), for respondents.

GREENBLOTT, J. Petitioners Jones and Darius were among 360 employees of the Department of Transportation who were laid off, effective July 1, 1975, by respondent Department of Transportation. Approximately 200 of these employees, including petitioners, were labor class employees. The layoffs were in conjunction with budget cuts caused by the recent State fiscal crisis. Petitioners Jones and Darius, along with petitioner Civil Service Employees' Association, instituted this CPLR article 78 proceeding on behalf of themselves and other laid off labor class employees challenging the procedure by which respondent Department of Transportation determined which labor class positions were to be abolished.

The petition was dismissed on the merits and the relief requested was denied. Special Term found that the layoff procedures followed by the Department of Transportation were in conformity with the law, that failure of respondents to notify petitioners of their veterans' rights under section 86 of the Civil Service Law was not adequate reason to reinstate petitioners, and that a class action could not properly be maintained in the proceeding.

Initially, we concur with Special Term's judgment that this does not appear to be a proper case for a class action. There are clearly facts individual to each of the petitioners, such as veteran or volunteer fireman status, as well as questions relating to the existence of vacancies in positions which each member of the class would be qualified to fill, which will determine their right to relief. Special Term was correct in denying class action status in this proceeding.

Moving now to the merits, petitioners contend that the procedure used by respondent Department of Transportation in determining which labor class employees to lay off was

arbitrary and capricious and an abuse of discretion. Respondents submitted two affidavits with their answer which detailed the process used by the Department of Transportation in determining which positions to abolish. The abolition of positions was necessitated by a State-wide reduction of expenditures.

John T. Ilacqua as Director of the Transportation Budgeting Bureau of the Department of Transportation assisted in preparation and execution of the department's budget, particularly personal service expenditures. In his affidavit he stated that he met with the State Budget Director and other Department of Transportation officials on May 8, 1975 to discuss personnel reduction plans in light of the State's fiscal crisis. Proposed reductions were discussed among Transportation Department officials and a proposed plan was submitted to the State Budget Director. The decision was made to try to equalize personnel strength in the highway maintenance program among the ten regions in the State.

Respondents also submitted the affidavit of Harrison F. Dunbrook, Assistant Director of the Highway Maintenance Subdivision of the Department of Transportation. In his affidavit he stated that at the time his office was notified of the required reduction in personnel, all ten regional highway maintenance groups were understaffed and that it was decided at the main office to equalize the understaffing of all regions. The positions selected for termination, he stated, were all determined at the regional office level by the regional highway maintenance group working in conjunction with the regional personnel group. The following instructions were given by Mr. Dunbrook's office to the regional highway maintenance groups for determining the individuals to terminate:

(a) Determine and plan to terminate those positions which exceeded staffing pattern criteria for tree and herbicide crews.

(b) Determine and consider those positions for termination which exceeded general staffing criteria and which could be tolerated while conducting the reduced overall maintenance program responsibilities.

(c) Consider all marginal performance employees and select those whose productivity was not at an acceptable level.

(d) Consider for termination those individuals who were in provisional and temporary status and also those who did not have tenure.

(e) Confer with the regional personnel group to assure that the employment rights of all individuals involved in the layoff would be observed.

(f) Finalize all proposed personnel transactions with the regional personnel group and to *[sic]* have them notify the main office personnel bureau of these proposed actions.

Mr. Dunbrook claims in his affidavit that all terminations were made in strict conformity with the Civil Service Law and the rules and regulations of the Department of Civil Service. His office apparently relied on a memorandum of the Department of Civil Service which was attached to Mr. Dunbrook's affidavit which details the procedure which must be followed in terminating civil service positions. The memorandum takes the position that labor class employees have no preference for retention on the basis of seniority or veteran's status upon the abolition of their positions. Thus, according to the memorandum, department heads may determine which incumbents to terminate and they are not required to follow a seniority rule.

The Civil Service Law divides public employment into classified and unclassified positions (Civil Service Law, §§ 35, 40). Classified service positions are further broken down into four classes (Civil Service Law, §§ 40, 41, 42, 43, 44). One of these classes is the labor class, into which petitioners Darius and Jones and the other persons they wish to represent in this action fall (Civil Service Law, § 43). The rights of employees to be retained upon abolition of their positions varies among the four classes (Civil Service Law, §§ 75, 80, 80-a, 85, 86). Labor class employees are among those afforded the least protection. Labor class employees are not granted tenure rights, with one exception to be hereafter discussed, based on seniority or preferred status. Unlike sections 80 or 80-a, which do provide for termination of employees in other classes in reverse order of seniority, where positions are abolished in good faith for economic reasons, a power which a public employer indisputably possesses, there is no provision in the Civil Service Law granting such protection to labor class employees.

In that the Legislature specifically made provisions for seniority rights for two of the four classes which make up the classified service but did not include such a provision for labor class employees, Special Term correctly concluded the absence of such a provision establishes the legislative intent that labor class employees are not entitled to seniority rights on abolition of their positions.

The one statutory protection applicable in this case which is granted to some labor class employees is found in section 86 of the Civil Service Law, which provides that labor class employees who are veterans or exempt volunteer firemen and whose positions are abolished "shall be transferred" to similar positions where vacancies exist. The memorandum of the Department of Civil Service attached to the affidavit of Mr. Dunbrook interprets the section as requiring "the individual to call the opening to the attention of the department head and demand transfer to it." Petitioners allege in their petition that respondents laid off employees in total disregard of section 86, that they did not advise petitioners of their rights to be transferred, and that certain employees were reassigned to labor class vacancies in contravention of section 86.

In the opinion of this court, the interpretation given section 86 of the Civil Service Law by respondents is untenable. Section 86 provides: *"If* the *position* in the non-competitive or in the *labor class held by* any *honorably discharged veteran* of the armed forces of the United States who served therein in time of war as defined in section eighty-five of this chapter, or by an *exempt volunteer fireman* as defined in the general municipal law, shall become unnecessary or be *abolished for reasons of economy* or otherwise, the *honorably discharged veteran or exempt volunteer fireman* holding such position *shall not be discharged* from the public service *but shall be transferred to a similar position wherein a vacancy exists,* and shall receive the same compensation therein. *It is hereby made the duty of all persons clothed with the power of appointment to make such transfer effective.* The right to transfer herein conferred shall continue for a period of one year following the date of abolition of the position, and may be exercised only where a vacancy exists in an appropriate position to which transfer may be made at the time of demand for transfer. Where the positions of more than one such veteran or exempt volunteer fireman are abolished and a lesser number of vacancies in similar positions exist to which transfer may be made, the veterans or exempt volunteer firemen whose positions are abolished shall be entitled to transfer to such vacancies in the order of their original appointment in the service. Nothing in this section shall be construed to apply to the position of private secretary, cashier or deputy of any official or department. This section shall have no application to persons encompassed by section eighty-

a of this chapter." (Emphasis added.) The language used by the Legislature is clear. Veterans and exempt volunteer firemen who fall under the section are not to be terminated when their positions are abolished if there are vacancies open in similar positions. It is the duty of persons clothed with the responsibility of appointment to effectuate such transfer.

Nothing in section 86 gives veterans or exempt volunteer firemen any preference as to job retention where positions are to be abolished and no vacancies exist. But the statute would be devoid of meaning if, in a situation where positions of persons both covered and not covered by it are abolished and vacancies in similar positions do exist, respondents were to be permitted to transfer persons who are not veterans or exempt volunteer firemen and discharge those employees for whose benefits section 86 was enacted.

Presumably in reliance upon the third sentence of the statute, respondents urge that a demand for transfer must be made. As a matter of common sense such an interpretation is unreasonable, for employees are hardly in as good a position as supervisory and managerial personnel to know if and where vacancies in similar positions exist. The interpretation of section 86 is more reasonable and harmonious if the third sentence is understood as dealing only with situations where a transfer has not been made in the first instance because no vacancy existed at the time of abolition of the position. In such a case, the laid off employee may well have found other employment, wherefore it is not unreasonable to require him to demand a transfer. However, where vacancies exist at the time of abolition, the statute speaks in mandatory terms: the veteran or fireman "shall not be discharged * * * but shall be transferred".

Respondents rely on cases construing former section 22 of the Civil Service Law (to the same effect as the present statute) which are claimed to support their interpretation of section 86. Both *Matter of Clancy v Halleran* (263 NY 258) and *Matter of Breckenridge* (160 NY 103), however, merely held that the petitioners did not sustain their burden of proof in showing that vacant positions existed to which they were entitled to be transferred. Petitioners clearly have the burden of proof in establishing that there are or were vacant positions to which they were entitled to be transferred under section 86.

We do agree with the court at Special Term that notice of vacancies would seem to be required to effectuate the intent of

section 86, but at this stage of the proceedings, petitioners' entitlement to relief stands or falls upon their ability to sustain their burden of proof. The only allegation we find in the petition which can be categorized as indicating that there might be a question of fact which if resolved in petitioners' favor would entitle them to relief is the claim that "certain employees were reassigned to labor class positions in contravention of section 86". This allegation, in our view, does not give adequate notice of the transactions of which petitioners complain. In the interests of justice, petitioners will be granted leave to replead, wherein they must allege with specificity that vacancies for which they were eligible existed at the time their positions were abolished, and that persons not entitled to the preference of section 86 were transferred to such positions. Upon setting forth such allegations, petitioners shall be entitled to a trial of issues of fact.

The judgment should be reversed, on the law and the facts, without costs, and matter remitted to Special Term for further proceedings not inconsistent herewith, without prejudice to the right of respondents to move to dismiss the petition upon petitioners' failure to set forth allegations entitling them to a trial of issues of fact.

KOREMAN, P. J., SWEENEY, KANE and MAHONEY, JJ., concur.

Judgment reversed, on the law and the facts, without costs, and matter remitted to Special Term for further proceedings not inconsistent herewith, without prejudice to the right of respondents to move to dismiss the petition upon petitioners' failure to set forth allegations entitling them to a trial of issues of fact.