OPINION OF THE COURT
Joseph D. Quinn, Jr., J.
In this mandamus proceeding brought under CPLR article 78 eight petitioners, whose jobs with the City of Poughkeepsie were excessed on January 1, 1979, in a fiscal retrenchment, seek review of their suspension and reinstatement to their *603 positions. At issue are the good faith of the layoffs and the observance of retention, retreat or transfer rights under the Civil Service Law.
The ninth petitioner, Geraldine De Nunzio, has a significantly different grievance. To be sure, her position was among those abolished for economic reasons. However, that petitioner was discharged from that job in advance of the layoffs, and on December 12, 1978, for purported noncompliance with a local law requiring municipal employees to be residents of the City of Poughkeepsie. Petitioner challenges the validity of that enactment on constitutional and procedural grounds. The ultimate relief sought by this petitioner is a declaration of invalidity of the act and an injunction against its enforcement.
An article 78 proceeding may not be utilized to review legislative action. (Matter of Lakeland Water Dist. v Onondaga County Water Auth., 24 NY2d 400, 407.) The proper vehicle to test the constitutionality and validity of the local law in question is an action for declaratory judgment. (Cf. Matter of Overhill Bldg. Co. v Delaney, 28 NY2d 449, 458.) Since this court has jurisdiction over all necessary parties, it will, pursuant to its discretionary power under CPLR 103 (subd [c]), sever the fifth, sixth, seventh, eighth and ninth causes of action, pertaining to the claims of petitioner De Nunzio, from the instant petition and proceeding, and convert those causes of action to an action for declaratory judgment. (Cf. Matter of Kovarsky v Housing & Dev. Admin, of City of N. Y., 31 NY2d 184, 191-192.) In their present state, the papers before the court relating to the De Nunzio claims raise questions of fact regarding the procedure employed in the adoption of the disputed act, and so do not lend themselves to a summary disposition of those claims. Unless additional papers warranting a grant of summary relief are submitted within 20 days from the date of this decision and order, a hearing will be required to resolve the factual issues.
During the month of July in the year 1978, respondent Common Council, the legislative body of the City of Poughkeepsie, presumably caught in the wake of a storm of protest over the excessive cost of government and attendant high taxes which swept the country, adopted a resolution expressing an interest to cut the expense of city government by reducing the city budget for 1979 by 25%. In a referendum held in conjunction with the 1978 fall elections, the city *604 electorate approved a proposition for a local law, adopted earlier by the same council, lowering the city’s constitutional tax rate from 2% of assessed valuation of real property to 1.5%.
Consonant with this, respondent city manager introduced a proposed 1979 budget to the Common Council on October 15, 1978. Between that date and December 7, 1978, public hearings were held to review this tentative budget. As a result of information gathered in these hearings, a decision was made to reduce expenditures for the forthcoming year. In the process, the positions of several city employees were sacrificed in the interest of economy by the device of abolition. Eight of the petitioners here were affected by this excessing. Shortly thereafter, following consultation with the Dutchess County Civil Service office, seven of them were given notice of the termination of their employment as of December 31, 1978. The eighth, Elizabeth Crawford, was notified of her demotion and retreat rights as of the same date.
The then current employment categories of the eight petitioners were as follows: Charles Abbott, superintendent of buildings and grounds, competitive class, honorably discharged veteran; Harold Decker, maintenance painter, noncompetitive class, honorably discharged veteran; Herbert Morrison, labor class, nonveteran; Dave Powers, motor equipment operator, noncompetitive class, nonveteran; James Maize, maintenance mason, noncompetitive class, honorably discharged veteran; Richard Bartel, laborer, noncompetitive class, honorably discharged veteran; Edward Widgett, custodial worker, noncompetitive class, honorably discharged veteran; Elizabeth Crawford, principal clerk, competitive class, nonveteran, demoted to senior clerk.
In protest, the eight petitioners, and Geraldine De Nunzio, whose claim has been converted to a declaratory judgment action and severed as previously indicated, and one Betty Yudell, a competitive class senior clerk and a nonveteran, who was displaced by Elizabeth Crawford, and who has since been reinstated and dropped as party by interim order of this court entered on a stipulation of counsel on February 22, 1979, brought on this proceeding by way of an order to show cause signed on December 27, 1978, and made returnable on January 2, 1979. The order to show cause contained a provision staying city action pendente lite. Pursuant to a stipulation of counsel, this court vacated that stay on January 3, 1979, and *605 this matter came on to be heard on January 15, 1979. Further stay was denied after oral argument.
The petition, insofar as the eight petitioners are concerned, avers variously that (1) there was sufficient financial cushion in Poughkeepsie’s 1979 budget to warrant petitioner’s continued employment, (2) "outspokenness” or other disciplinary problems were at the root of the layoffs, (3) Federally funded Comprehensive Employment and Training Act (CETA) employees were utilized to perform the job duties of the ousted petitioners, (4) the retention and reinstatement rights of petitioner Abbott under sections 80 and 81 of the Civil Service Law were disregarded, (5) avowed retention and reinstatement rights of petitioners Decker, Powers, Maize, Bartel, and Widgett under section 80-a of the Civil Service Law were ignored, and (6) purported retention or transfer rights of petitioners Abbott, Decker, Maize, Bartel and Widgett under subdivision 7 of section 85 or section 86 of the Civil Service Law were overlooked.
Damages in amount of $100,000 are sought in the petition for each veteran petitioner for claimed deprivation of rights under subdivision 7 of section 85 of the Civil Service Law.
The City of Poughkeepsie and its officials have interposed an answer consisting of (1) admissions regarding the abolishment of positions, (2) general denials of petitioners’ material allegations, and (3) affirmative defenses averring (a) the good faith and regularity of their determination to abolish positions, and (b) the compliance of their actions with applicable provisions of the Civil Service Law.
Accompanying the answer are affidavits of the Poughkeepsie city manager and the commissioner of finance, attesting variously to (1) the inaccuracy of petitioners’ allegations relating to the city’s fiscal condition, (2) the simultaneous excessing of some 33 CETA employees alleged by petitioners to be substituting for them, (3) the nonretaliatory nature of the disputed job abolitions, and (4) reliance upon the Dutchess County Civil Service office for guidance in civil service matters.
Exhibits attached to respondents’ answer include copies of correspondence betwen the Poughkeepsie city manager and the county personnel office regarding procedure to be followed on the layoffs.
By way of replication, petitioners, their union agent, as well as their counsel, all filed affidavits. In the main, these are but cumulative to the petition. At most, they establish that loss of *606 employment will result in severe financial hardship for petitioners.
In disposing of this proceeding, the court observes, at the outset, that the Common Council "is charged with [the] responsibility for securing an efficient and economical administration of the city government, and except as its powers are limited by the constitution of the State, the Civil Service Law or other statutes, discretion is vested in it to determine what services shall be performed for the city, who shall perform them and what compensation shall be paid for such services. So long as the Council does not transcend the limits of the powers conferred upon it, no court may substitute its judgment for the judgment of the Council in such matters (Matter of Wipfler v Klebes, 284 NY 284, 253; emphasis ours.)
It is axiomatic that municipal officials, vested with authority to create and abolish positions and to adopt a budget, have the power and the prerogative to determine that civil service positions may be abolished, in good faith, for reasons of efficiency and economy. (Cf. Matter of Turner v Berle, 61 AD2d 712, 714-715.) In the absence of fraud, corruption or bad faith, the motives of a legislative body exercising such a power may not be made the subject of judicial inquiry. (Cf. Bacon v Miller, 247 NY 311, 318-319.)
The burden of showing bad faith and the like rests upon those attacking the validity of the abolition. (Matter of Wipñer v Klebes, supra, p 255.) Since it cannot be gainsaid that the excessing of jobs here accomplished a saving and contributed to a reduced budget, it follows that petitioners have failed to sustain their burden in this regard. It is unavailing to show that Poughkeepsie was far from the brink of financial disaster or that the city fathers might better have spared petitioners’ positions and done their pruning in other areas of the budget. Nor does petitioners’ adroit suggestion that past breeches of discipline led to their ouster come close to being sufficient evidence that job abolishment was tantamount to managerial retaliation.
Nor is there any evidence to support the conclusory allegation that CETA personnel, who have no civil service standing, have been substituted in the place of petitioners to perform their job duties. CETA, to our understanding, is an acronym for a Federal program whereby purportedly unemployable individuals are hired on a temporary basis by local government, paid with Federal moneys, and trained in skills de *607 signed to enhance their opportunity for future employment in the general labor market. Respondents’ papers contain uncontradicted documentary proof that 33 CETA employees with corresponding job descriptions were let go because of the elimination of the regular positions in dispute here. This proof is indeed corroborated by petitioners’ own union agent in his reply affidavit of January 12, 1979.
Charles Abbott held the competitive class position of superintendent of city buildings and grounds. It is conceded that (1) this is a title in which there are no lower level occupied positions in direct line of promotion, and (2) this petitioner had no prior service in any other city position. Consequently, he had no retreat or "bumping” rights which would allow him to displace an incumbent in the same layoff unit or in any other, pursuant to the provisions of subdivision 5 of section 80 of the Civil Service Law. By the same token, he had no retention rights as a nondisabled veteran under the provisions of subdivision 7 of section 85 of the same law. Nevertheless, he is entitled to have his name placed on a preferred eligible list for four years, under section 81 of the Civil Service Law, to protect his reinstatement rights, should the city elect to fill his position again. He has been accorded this protection. Since he is entitled to no other relief, the petition is denied to him, and as to him, this proceeding is dismissed on the merits.
Herbert Morrison is unique among the petitioners, in that he held a position in the labor class and in that, concededly, he is neither a veteran nor volunteer fireman. Unfortunately, the Civil Service Law affords him no protection in the event of abolition. (Matter of Jones v Carey, 55 AD2d 260, 263-264.) For this reason, the petition is denied as to him, and as to him, the proceeding is dismissed on the merits.
Harold Decker, Dave Powers, James Maize, Richard Bartel, and Edward Widgett each held positions with the City of Poughkeepsie in the noncompetitive class. With the exception of Powers, all assert nondisabled veterans’ status. As members of the noncompetitive class, all claim retention and retreat rights under section 80-a of the Civil Service Law, and, inferentially, the right to be placed on preferred eligible lists pursuant to section 81 of the same chapter. Additionally, all of these petitioners, other than Powers, assert rights, as veterans, to retention, and to damages for deprivation of that prerogative, under subdivisions 7 and 8 of section 85 of the *608 Civil Service Law, to transfer, under section 86 of the same law.
Research fails to disclose any prior instance where noncompetitive class employees of a city or other civil division of this State have ever sought or obtained relief from job abolition under section 80-a of the Civil Service Law. To that extent, these five petitioners raise a question of novel impression. And that is no small wonder, since, on its face that section treats only with rights related to the abolition or reduction of noncompetitive class positions at the State level of the classified service. The language of the section is plain and unambiguous, and a plain reading of that language leads to the inescapable conclusion that the sole intent and purpose of the Legislature, in enacting this section, was to confer upon certain State level noncompetitive class employees only, the same benefits of retention and retreat which were previously made available solely to competitive class employees of the State and its civil divisions under section 80 of the Civil Service Law.
Moreover, section 80-a of the Civil Service Law was passed on May 15, 1972, on a message of necessity and was enacted as a part of chapter 283 of the Laws of 1972. Examination of both the heading of that chapter and of section 45 of the chapter itself manifests an express design on the part of the Legislature to enact section 80-a of the Civil Service Law for the limited purpose of implementing a contemplated collective bargaining agreement to be entered into prior to September 1, 1972, between the State of New York and the Civil Service Employees Association to cover layoff units for employees affecting employees of the State representation units which were specified to be the administrative services unit, the institutional services unit, the operational services unit and the professional, scientific and technical services unit. To put it another way, section 80-a of the Civil Service Law had its genesis in that collective agreement and was intended to soften the blow of an anticipated decrease in services in the State’s mental institutions. It was a part of the then new "open ward” policy for State mental patients which led to job abolitions.
Clearly then, these five petitioners can derive no rights frpm section 80-a of the Civil Service Law.
To the extent that it seeks relief for petitioners Decker, Powers, Maize, Bartel and Widgett under sections 80-a or 81 *609 of the Civil Service Law, the petition is denied and the proceeding is dismissed on the merits.
To the degree that Decker, Maize, Bartel and Widgett assert claims to transfer rights as veterans, those petitioners have the burden of proving that there are or were vacant positions to which they were entitled to be transferred under section 86 of the Civil Service Law. They have failed to shoulder this burden. Ironically enough, section 86 of the Civil Service Law, by its express terms, has no application to persons encompassed by section 80-a of the Civil Service Law. Be this as it may, the petition is denied as to those claims and the proceeding is dismissed. In the interests of justice, those four petitioners are granted leave to replead their purported section 86 claims with specificity. (Cf. Matter of Jones v Carey, 55 AD2d 260, 265-266, supra.)
As has been previously indicated the petitioner Elizabeth Crawford displaced the now dropped party, Betty Yudell, in the aftermath of the abolition. Betty Yudell has since been reinstated. Assumably, Elizabeth Crawford may have been ousted by that reinstatement. At any rate, the pleadings provide no information as to her present status. Consequently, the petition is denied as to her and the proceeding is dismissed against her, with leave to replead if she be so advised.