### Bert NAUTA and Sandra Nauta, Plaintiffs,

v.

CITY OF POUGHKEEPSIE, NEW YORK; Thomas Aposporos, as Mayor, Daniel Fitzpatrick, Former City Manager, Albert Signore, Former Superintendent of Public Works, City Alderman Al Weil, Arthur Weinberg, Pat Letterii, Former City Alderman, Robert Beeble, Joseph Runza, John Greene, All Defendants Individually, Defendants.

No. 82 Civ. 1169 (MEL).

United States District Court,
S.D. New York.

June 10, 1985.

David T. Warshaw, Poughkeepsie, N.Y., for plaintiffs.

McCabe & Mack, Poughkeepsie, N.Y., for defendants; David L. Posner, Poughkeepsie, N.Y., of counsel.

LASKER, District Judge.

This civil rights action arises out of events surrounding the adoption of the City of Poughkeepsie's 1981 budget. In addition to numerous federal civil rights claims Bert Nauta, plaintiff, asserts a plethora of state causes of action against the City and past and present Poughkeepsie officials in their individual capacities. The defendants move pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56 to dismiss the complaint and for summary judgment.[1]

Poughkeepsie's legislative body ("the council") consists of the mayor and eight aldermen, all of whom are elected officials. By a majority vote the council appoints a city manager as its chief executive officer. The city manager is responsible for presenting to the council a preliminary annual budget to aid the council's formulation of the final budget.

Beginning with the passage in 1978 of a local law limiting the City's taxing authority to 1½% of the five year average of the full value of the real estate within its borders, the City entered a period of considera-

---

1. The defendants also move to amend their answer to assert an affirmative defense of lack of personal jurisdiction with respect to defendant Alfred Signore and thereafter move for an order dismissing the complaint against him pursuant to Rule 12(b)(2) Fed.R.Civ.P. The motion to amend is denied as moot since the complaint is dismissed in its entirety.

ble budget cutting caused by various fiscal restraints. As was true of the preceding budget years the 1981 proposed budget called for the elimination of city personnel,[2] including the position of "Senior Engineering Aide," a civil service position, which Nauta had held since 1976. When the 1981 budget was adopted on December 16, 1980 fourteen previously funded positions were eliminated, Nauta's among them.

### I. Protected Property Interests

A) Nauta's first and third causes of action[3] assert that he had a constitutionally protected property interest in his continued employment as a permanent civil service employee and that he was deprived of his position as Senior Engineering Aide without due process. Defendants answer that the claim is without merit because the elimination of Nauta's position did not violate any of Nauta's contractual or civil service rights.

Whether Nauta had a legitimate entitlement to which due process protection attached depends upon state law, *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), here, New York's Civil Service Law. N.Y.CIV. SERV.LAW §§ 75 *et seq.* (McKinney 1983). Under Section 80 a public employer has "[the] undisputed management prerogative ... to abolish positions in the competitive class civil service in the interest of economy...." *Saur v. Director of Creedmoor Psychiatric Center*, 41 N.Y.2d 1023, 1024, 363 N.E.2d 1374, 1375, 395 N.Y.S.2d 629, 630 (1977); *accord Switzer v. Sanitary District No. 7*, 59 A.D.2d 889, 890, 399 N.Y.S.2d 43, 44 (2d Dept.), *appeal dismissed*, 43 N.Y.2d 845 (1977); *see also Abbott v. City of Poughkeepsie*, 98 Misc.2d 601, 414 N.Y.S.2d 458, at 461 (1979). Moreover "if the promotion of efficiency or

economy in government is the basis for the termination of a position, then such action is deemed to be taken in good faith ..." *Connolly v. Carey*, 80 A.D.2d 936, 937, 437 N.Y.S.2d 768, 769 (3rd Dept.1981). Faced with the allegation of legitimate budgetary motivation, plaintiff has the burden of showing that there was not a *bona fide* financial reason to abolish his position, or that a financial saving was not accomplished by the elimination of the position, or that another person was hired in his place, or some other indicia of bad faith. *Turner v. Berle*, 61 A.D.2d 712, 714–15, 404 N.Y.S.2d 50, 52 (3rd Dept.1978).

The defendants assert that Nauta's position was eliminated for legitimate budgetary reasons, a contention which Nauta disputes. Although it is not normally possible to decide the issue of a defendant's good or bad faith on a motion (*see, e.g., Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962)), summary judgment for the defendants is appropriate here because the evidence of budgetary motive is so compelling that no reasonable interpretation of the evidence supports the existence of a "genuine issue as to a material fact." *Cf. Quinn v. Syracuse Model Neighborhood Corporation*, 613 F.2d 438, 445 (2d Cir.1980) ("The mere possibility that a factual dispute may exist, without more is not sufficient to overcome a convincing presentation by the moving party.")

The undisputed evidence in this case establishes that in 1978 the City enacted a local law lowering the permissible tax revenue from 2% of the five year average real property assessment to 1½%.[4] As a result of this fiscal consideration, in 1979 twenty eight positions were eliminated.[5] As of

---

**2.** The personnel cuts during these years sparked numerous controversies. The City has had to defend itself against suits brought by a number of individuals. *See Warshaw v. City of Poughkeepsie*, 82 Civ. 1170 (S.D.N.Y.1982) (ADS); *Abbott v. City of Poughkeepsie*, 98 Misc.2d 601, 414 N.Y.S.2d 458, *aff'd*, 71 A.D.2d 1010, 420 N.Y. S.2d 367 (2d Dept.1979). Notably, in each instance the courts found the personnel reduc-

tions were motivated by legitimate economic concerns.

**3.** *See* footnote 19.

**4.** Def.Ex.N; Affidavit of Joseph M. Chiseri dated Apr. 26, 1984, at ¶ 12 ("Chiseri Aff.").

**5.** Chiseri Aff. at ¶ 13.

1980 the City budget funded 419 city employees. In 1981, the relevant year in this case, 14 more positions were eliminated, of which eleven slots were filled at the time of the deletion, including Nauta's position of Senior Engineering Aide. The City's 1982 budget eliminated 43 additional jobs followed by the deletion of 13 positions in 1983. As of February 1, 1984 the budget called for the funding of 348 positions, making a total reduction of 71 positions between 1980 and 1984. Of the 71 positions eliminated, only one, that of "Tree Foreman" has been re-created.[6]

In early December of 1980 Daniel Fitzpatrick, the then City Manager, was directed by members of the Finance Committee of the City Council to propose to them approximately $300,000 in personnel cuts for the 1981 budget.[7] Shortly thereafter, Fitzpatrick advised Alfred Signore, then Superintendent of the Department of Public Works (a department made up in part by the Department of Engineering) of the impending personnel reductions and instructed Signore to provide Fitzpatrick with a list of positions for elimination.[8] After meeting with John DeZuane, the City Engineer, Signore provided Fitzpatrick with the requested list, which recommended that the Senior Engineering Aide position, among others, could be eliminated.[9] Fitzpatrick conveyed this information to the Common Council on December 12, 1980.[10] The budget which deleted the position was enacted December 16, 1980.[11]

In addition to Nauta's position, in 1980 the Department of Engineering consisted of the City Engineer and an Assistant Engineer—both professional engineering positions, and a draftsman.[12] The defendants assert that the position of Senior Engineering Aide was selected for elimination because it was concluded that that position could be eliminated with the least detriment to the department.[13] Nauta does not dispute that he did not have a professional engineering degree or that he was unqualified to be a draftsman.[14]

The 1980 budget called for salaries totaling $79,766 within the Department of Engineering. As of 1984 the City budget funded salaries within that department of $74,196. The position of Senior Engineering Aide has not been re-created since it was cut in 1981.[15]

To rebut this evidence, which establishes a *prima facie* case of legitimate budgetary concerns, Nauta asserts that three months after his position was cut the City Manager attempted to re-create the same job under a new title for the purpose of hiring one Eugene Taylor. This allegation is without evidentiary support. Documentary evidence establishes that Eugene Taylor was hired to fill a temporary position for which funding was provided in the 1981 budget. The five-month position was in the Department of Street Maintenance, and was not, as Nauta claims, an engineering position.[16] These facts do not give rise to an inference of bad faith.

Nauta also argues that bad faith is indicated because the City attempted to fill his position by using individuals working "out of title" in violation of the Civil Service

---

6. *See id.* at ¶¶ 3–6.

7. *Id.* at ¶ 16; *see also* Affidavit of Daniel Fitzpatrick dated Apr. 26, 1984 at ¶¶ 7–9 ("Fitzpatrick Aff."); Affidavit of Alfred Signore dated Apr. 30, 1984 at ¶ 3 ("Signore Aff.").

8. Signore Aff. at ¶ 3.

9. *Id.* at ¶¶ 4, 5; *see also* Affidavit of John DeZuane dated Apr. 23, 1984 at ¶¶ 3, 5 ("DeZuane Aff.").

10. Fitzpatrick Aff. at ¶ 10.

11. *See* Def.Ex.C.

12. Signore Affidavit at ¶ 5.

13. *Id.;* DeZuane Aff. at ¶ 3.

14. However both before and after his job was eliminated the City offered Nauta other employment positions (for which the City felt Nauta qualified), which Nauta rejected. *See* DeZuane Aff. at ¶¶ 7, 8.

15. Chiseri Aff. at ¶ 11; Def.Ex.E.

16. Pl.Ex. 3; Affidavit of Joseph M. Chiseri dated Oct. 3, 1984, at ¶¶ 4–6 and Ex. A (attached).

Law. This assertion fails as a matter of law.

Nauta's assertion is supported by the affidavit (dated Sept. 14, 1984) of Richard Duplika, the draftsman in the engineering department:

> After [Nauta's] layoff in 1982, the Engineering Department had a great deal of field work which required completion. As a result other city employees have worked with the Engineering Department from time to time. Listed below are the city employees who have worked with the department in order to complete work which before his layoff, Mr. Nauta would be responsible to do.... Although none of the men listed above are required to perform any highly technical Civil Engineering skills they have helped to complete field work which Mr. Nauta would have performed if he was still with the department.

■ Under Section 61(2) "civil service employees may not be *regularly* assigned to perform the duties of a higher civil service position without appointment to the title, grade and salary of such higher position." *Sheridan v. Kennedy*, 19 Misc.2d 765, 194 N.Y.S.2d 115, 117, *aff'd*, 10 A.D.2d 606, 197 N.Y.S.2d 412 (1st Dept.), *aff'd*, 8 N.Y.2d 794, 168 N.E.2d 133, 201 N.Y.S.2d 805 (1960) (emphasis in the original). The purpose of the prohibition is to prevent the frustration of promotional policies built into the act. While it is a violation of the law to require a civil service employee continually to perform the duties of a higher position, there is no prohibition against an employee taking on such tasks on an irregular, short-term basis. *See Clifford v. Police Commissioner*, Sup., 152 N.Y.S.2d 923, 929, *aff'd*, 2 A.D.2d 674, 154 N.Y.S.2d 115 (1st Dept.1956).

■ A foreseeable result of personnel budget cuts is that remaining employees occasionally may be required to share an additional burden. However, the fact that workers from other departments performed tasks from "time to time" that Nauta might have done is not barred by Section 61. The evidence is insufficient to create a colorable claim of "working out of title" and accordingly provides no basis for finding bad faith.

Nauta also offers as evidence of bad faith a statement allegedly made by Signore a few months before the 1981 budget was enacted that " 'Come budget time that guy is all finished here' or words to this effect".[17] Signore does not deny the statement directly but denies any improper motive.[18] However, assuming *arguendo*, that the statement was made, when viewed against the wealth of evidence demonstrating a legitimate budgetary motive the statement does not support a reasonable inference of bad faith, and is not alone sufficient to defeat the motion.

■ In sum, Nauta has failed to substantiate the existence of a genuine dispute as to the defendants' bad faith. *See S.E.C. v. Research Automation Corporation*, 585 F.2d 31, 33 (2d Cir.1978). The only logical interpretation of the undisputed evidence is that fiscal constraints forced the City to make personnel cuts, one of which was Nauta's position. The City has established a *prima facie* case of *bona fide* budgetary motivation and Nauta has not brought "to [our] attention some affirmative indication that his version of the relevant events is not fanciful." *Quinn v. Syracuse Model Neighborhood Corporation*, 613 F.2d at 445. Since, as a matter of law there is no showing that the Civil Service Laws were violated Nauta cannot claim a protected property interest under *Roth, supra*.[19] Ac-

---

**17.** *See also* Affidavit of Bert Nauta dated Sept. 13, 1984 at ¶ 3 ("Nauta Aff."); *see also* Affidavit of Matthew Soyka dated Aug. 1, 1984 at ¶ 4.

**18.** Signore Aff. at ¶ 7; *See also* DeZuane Aff. at ¶ 4.

**19.** Nauta apparently rests one of his due process claims on the fact that, after learning of the impending position elimination he applied for a job in the Water and Sewer Department as "Working Foreman" and this position, too, was later eliminated from the 1981 budget. Nauta Aff. at ¶ 12. However, aside from a conclusory allegation that this action was part of a conspiracy to get rid of Nauta as a City employee plaintiff points to no evidence which would

cordingly, summary judgment is granted as to Nauta's first and third claims.

■ B) The second cause of action alleges that Nauta possessed a protected property interest in being re-hired upon the opening of a position for which he was qualified. He asserts that he was denied due process when the defendants failed to consider him before filling the position of "Water Maintenance Man" when it became available in March 1981. The defendants do not deny the factual allegations of Nauta's claim.

The short answer to plaintiff's contention is that the arbitration between the City and the Civil Service Employee Association [20] in which Nauta was awarded full back pay and was instated in the "Water Maintenance Man" position (and indeed he continues to hold the position to date), provided Nauta the process that plaintiff was due. *See Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

II. Constitutional Liberty Interest

The fourth cause of action in Nauta's complaint seeks redress for an allegedly stigmatizing statement that plaintiff claims implicates his constitutionally protected liberty interest. The defendants move for summary judgment on the grounds that (1) the statement in question was not stigmatizing and (2) if it was, Nauta has not suffered any disability with respect to other employment or the pursuit of his career.

■ The statement at issue is one sentence in the December 12, 1980 edition of the "Poughkeepsie Journal" which reads:

Fitzpatrick, Corporation Counsel Richard Cantor and the seven member council

majority agreed that the closed session conformed with the state's open meetings law because at least one of the job cuts were based on problems of inefficiency and incompetence.[21]

The first thing that stands out in reading this generalized statement is that it makes no mention of Nauta. Nor does Nauta allege any other facts from which it reasonably can be inferred that of the eleven people whose positions were eliminated he was the person singled out as incompetent. Indeed, in an earlier unrelated action against the City, David T. Warshaw, Esq., Nauta's attorney in this case, brought an action on his own behalf in which he asserted, based on the same statement at issue here, a violation of his liberty interest. Warshaw claimed that *he* was the individual to whom the sentence referred. *Warshaw v. City of Poughkeepsie*, 82 Civ. 1170 (ADS).[22] The *Warshaw* court dismissed the claim commenting that (assuming the statement was made) "the only person who knows who Fitzpatrick was referring to was Fitzpatrick himself."[23] We concur in this logical conclusion. Further, we find that the statement does not "call into question [Nauta's] good name, reputation, honor, or integrity" and therefore it is not stigmatizing as a matter of law.[24] *See Quinn v. Syracuse Model Neighborhood Corporation*, 613 F.2d at 446. Accordingly, the fourth cause of action is dismissed.

III. Remaining Claims

■ Nauta concedes that his Fifth, Sixth, Seventh and Eighth claims are legally insufficient. These claims are dismissed. Further, since we have held that the other

---

tend to prove that the elimination of the Working Foreman position was motivated by other than legitimate fiscal considerations. *See* Pl.Ex. 2. Nauta does not dispute the defendants' assertion in their Rule 3(g) Statement that Nauta did not have lateral displacement, vertical bumping or retreat rights. *See* Affidavit of Kathleen Jennings dated Apr. 25, 1984.

20. *See* Def.Ex. K; Nauta did not challenge the original layoff by filing a grievance under his union contract nor by commencing an Article 78 proceeding in state court.

21. *See* Pl.Ex. A (attached to Complaint).

22. *See* Def.Exs. A, O.

23. *See* Def.Ex. A at p. 30.

24. Nor has Nauta put before us any evidence indicating that the allegedly stigmatizing statement has hampered his ability to find employment. *See Quinn v. Syracuse Model Neighborhood Corporation*, 613 F.2d at 446. Indeed, the City offered him two positions and he has been employed by the City since 1982.

986

federal claims lack substantial merit [25] the pendant state claims also are dismissed. *Dunton v. County of Suffolk,* 729 F.2d 903, 910–11 (2d Cir.1984). Moreover, dismissal is particularly warranted where, as here, the federal claims are without merit and a number of the state claims present novel issues which are uniquely local matters more appropriately resolved by New York courts in the first instance. *See, e.g.,* Complaint at ¶ 90 (presenting issue whether Poughkeepsie Charter Section 36, which is penal in nature, provides for a private right of action).

Summary judgment is granted on the first four claims and the complaint is dismissed in its entirety.

It is so ordered.

---

**25.** The defendants' argument that they are immune from suit in their individual capacities is not addressed because we dismiss the federal claims on the merits.