HUTCHINSON v DEPARTMENT OF MENTAL HEALTH

Docket No. 51977. Submitted June 1, 1981, at Lansing.—Decided August 18, 1981. Leave to appeal applied for.

Ronald R. Hutchinson and nine others filed grievances with the Civil Service Commission to overturn the decision of the Department of Mental Health to abolish their positions in the research laboratory at the Kalamazoo State Hospital. They argued that the abolition of the positions was politically motivated rather than prompted by administrative efficiency. The hearing officer found that the decision to terminate the positions was made in good faith, that the duties of the positions terminated were not transferred to any other persons and that the terminations were valid. The Ingham Circuit Court, Robert Holmes Bell, J., affirmed. Petitioners appealed. *Held:*

1. Ulterior motives will not generally invalidate an otherwise valid decision of a governmental department to terminate a position for reasons of administrative efficiency.

2. Economy and efficiency justifying the abolition of a position establishes good faith and can be shown by proof that the duties of the position were not assigned to another person after the position was abolished.

3. It was unnecessary for the circuit court to refer to all ten petitioners by name in its opinion since they all raised the same legal issue. The court did not err in only referring to five of them by name.

Affirmed.

1. APPEAL — CIVIL SERVICE.

The Court of Appeals will affirm the holding of a Civil Service Commission hearing officer where it is not contrary to law, supported by competent, material and substantial evidence on the whole record, and not arbitrary, capricious or clearly an abuse of discretion.

REFERENCES FOR POINTS IN HEADNOTES
[1] 15A Am Jur 2d, Civil Service § 79.
[2] 1 Am Jur 2d, Administrative Law § 146.
[3, 4] 63 Am Jur 2d, Public Officers and Employees §§ 180, 181.

2. CONSTITUTIONAL LAW — APPEAL — ADMINISTRATIVE LAW.

    The drafters of the Michigan Constitution intended, by use of the sentence "[t]his review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record", a review which considers the whole record, not just those portions of the record supporting the findings of an administrative agency; although such a review does not attain the status of *de novo* review, it necessarily entails a degree of qualitative and quantitative evaluation of evidence considered by an agency (Const 1963, art 6, § 28).

3. LABOR RELATIONS — PUBLIC EMPLOYEES — TERMINATION OF POSITIONS.

    Ulterior motives will not generally invalidate an otherwise valid decision of a governmental department to terminate a position for reasons of administrative efficiency.

4. LABOR RELATIONS — PUBLIC EMPLOYEES — TERMINATION OF POSITIONS — GOOD FAITH.

    A governmental department must act in good faith in abolishing a position; economy and efficiency justifying the abolition of a position establishes good faith and can be shown by proof that the duties of the position were not assigned to another person after the position was abolished.

*Lilly & Domeny, P.C.,* for petitioner.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *George L. McCargar* and *Thomas R. Wheeker,* Assistants Attorney General, for the Department of Mental Health.

Before: BEASLEY, P.J., and M. J. KELLY and N. A. BAGULEY,* JJ.

BEASLEY, P.J. On June 30, 1975, the positions of the ten petitioners, employees of the research laboratory at the Kalamazoo State Hospital, were

---

    * Circuit judge, sitting on the Court of Appeals by assignment.

terminated. They jointly filed grievances seeking to overturn the decision to terminate and were unsuccessful. On May 21, 1980, the decision of the hearing officer, denying the grievances, was affirmed by the circuit court. Petitioners appeal as of right.

On appeal, petitioners contend that the hearing officer's finding that the termination of their employment was made for reasons of "administrative efficiency" was not supported by competent evidence. They claim that the research laboratory at the Kalamazoo State Hospital was abolished after one of the petitioners, Dr. Ronald R. Hutchinson, sided with the "losing camp" in a dispute within the Department of Mental Health. Petitioners argue that the decision to terminate was not prompted by administrative efficiency, but, rather, was the result of political pressures. They argue that their positions could not be abolished as a pretext for terminating their employment without following the safeguards provided employees dismissed for cause under Rule 32 of the Rules of the Civil Service Commission.

Article 11, § 5 of the 1963 Michigan Constitution provides, in pertinent part:

"The appointing authorities may create or abolish positions for reasons of administrative efficiency without the approval of the commission. Positions shall not be created nor abolished except for reasons of administrative efficiency. Any employee considering himself aggrieved by the abolition or creation of a position shall have a right of appeal to the commission through established grievance procedures."

The power to abolish positions is also vested in the appointing authority under Rule 16.5 of the Rules of the Civil Service Commission. That rule

states that employees separated as a result of abolishing their position have re-employment preference rights as set out in the rules.

The Civil Service Rules also state:

"32.1 *Causes.*—An employee in the state civil service may be dismissed or suspended for any of the following reasons:

"32.1a Failure to carry out the duties and obligations imposed upon him by these rules and by agency management.

"32.1b Conduct unbecoming a state employee.

"32.1c Unsatisfactory service.

"32.2 *Procedure.*—Whenever an appointing authority considers it necessary to dismiss or suspend an employee, he shall:

"32.2a Notify the employee in writing giving specific reasons for the action.

"32.2b Give prior or concurrent written notice to the state personnel director.

"32.2c Supplement the notice to the state personnel director with the prescribed form within five days and furnish a copy of the form to the employee."

The hearing officer found that the department validly terminated the research department for reasons of administrative efficiency:

"Were the positions abolished 'for reasons of administrative efficiency' as authorized by the constitution in the foregoing quoted sections? The oral testimony and the exhibits offer abundant proof that they were. The hospital superintendent, the department director and his deputy director all testified that 'administrative efficiency' was the basis of the abolishment of the entire department and the consequent abolishment of the grievants' positions. The financial squeeze starting in 1974 and continuing required a reduction in expenditure throughout the department and the maintenance

of adequate patient care and treatment at a reduced cost became the password. * * * This failure, plus the required savings in the hospital budget, brought about the need to abolish the positions for reasons of administrative efficiency. The conflicting testimony concerning the amount of money that the state would save each year is of no great consequence. * * * 'Administrative efficiency' and 'reduced expenditures' are not synonymous. In fact the former can exist without the latter.

"The abolishment of a controversial, troublesome department which was unproductive from the standpoint of the hospital's mission to serve and treat mental patients would, in my opinion, amount to abolishment for administrative efficiency under the constitution, even without the showing of a monetary savings. The testimony concerning bad publicity, adverse findings in an audit and administrative conflicts bolster the theory of abolishment for administrative efficiency rather than detracting from it. Had the framers of the constitution meant to say that positions could only be abolished to 'save money', they would have so stated.

"Nowhere in the testimony or in the exhibits is there any evidence that any part of the duties of the terminated employees were transferred to other employees or that any new positions were created to take over their former duties. This amounts to strong evidence that the abolishment of research and the positions therein was definitely for reasons of administrative efficiency."

The circuit court agreed.

On appeal, this Court will affirm the holding of the hearing officer so long as that ruling is not contrary to law and is supported by competent, material and substantial evidence on the whole record, and is not arbitrary, capricious or clearly an abuse of discretion.[1]

In *Michigan Employment Relations Comm v Detroit Symphony Orchestra, Inc,*[2] the Michigan

---

[1] Const 1963, art 6, § 28, MCL 24.306; MSA 3.560(206).

[2] 393 Mich 116, 124; 223 NW2d 283 (1974).

Supreme Court discussed the meaning of "substantial evidence" and found:

"What the drafters of the Constitution intended [by the phrase substantial evidence] was a thorough judicial review of administrative decision, a review which considers the whole record—that is, both sides of the record—not just those portions of the record supporting the findings of the administrative agency. Although such a review does not attain the status of *de novo* review, it necessarily entails a degree of qualitative and quantitative evaluation of evidence considered by an agency. Such review must be undertaken with considerable sensitivity in order that the courts accord due deference to administrative expertise and not invade the province of exclusive administrative fact-finding by displacing an agency's choice between two reasonably differing views."

Petitioners point out that a substantial amount of the testimony indicated that the directors of the Kalamazoo State Hospital had political motivation for terminating the research department. These political motives included the adverse publicity that surrounded an audit of the department, the alignment of Dr. Hutchinson with the ousted faction in a political dispute, and the antagonism created by placing the research department at the Kalamazoo State Hospital facilities. The Department of Mental Health does not dispute that there was a great deal of antagonism in the Kalamazoo State Hospital facility.

The evidence clearly indicates, however, that there were valid administrative reasons for terminating the department. In the program report of the research department, dated October, 1974, it was noted that "no known benefits [in treatment programs] have yet resulted from Research Department efforts".

In a letter from Dr. Hutchinson to Department of Mental Health officials, dated February 11, 1975, Dr. Hutchinson himself stated:

"I must agree that the Research Program can not [sic] currently justify continued Department of Mental Health financial support, especially in view of the lack of involvement in patient treatment and the very general and severe financial over-extension which confronts the state government."

Petitioners argue that the ulterior motive of the department invalidates the decision to terminate. Petitioners cite only cases dealing with age and sex discrimination, which involve a higher level of scrutiny. The general rule is, however, that ulterior motives will not invalidate an otherwise valid decision to terminate a position due to administrative efficiency.[3]

While it is true that good faith must be shown before a position may be abolished, good faith is established by a showing that the abolishment of the position was justified by economy and efficiency. This can be shown by proof that the duties were not assigned to another person after the position was abolished.[4]

In the case at bar, the hearing officer properly recognized that the decision to terminate was made in good faith. Furthermore, there was no showing of any subterfuge in the termination, as the duties of the positions terminated were not

[3] Anno: *Determination As to Good Faith in Abolition of Public Office or Employment Subject to Civil Service or Merit System,* 87 ALR3d 1165. *Abbott v Poughkeepsie,* 98 Misc 2d 601; 414 NYS2d 458 (1979), *aff'd* 71 App Div 2d 1010; 420 NYS2d 367 (1979), *Burkhart v Moore,* 580 SW2d 108 (Tex Civ App, 1979), *Juergensmeyer v Bensinger,* 7 Ill App 3d 698; 288 NW2d 519 (1972), *Amodio v Civil Service Comm,* 81 NJ Super 22; 194 A2d 512 (1963).

[4] *Burkhart v Moore, supra, Juergensmeyer v Bensinger, supra.*

transferred to any other persons. Under these circumstances, the possible ulterior motives of the department are irrelevant.

Petitioners further argue that the fact that none of the research department employees continued their service with the state supports the showing that they were fired rather than terminated due to administrative efficiency. A review of the memoranda from the personnel director of the Kalamazoo State Hospital to the terminated employees indicates, however, that those employees who had established status and were entitled to employment preferences were offered opportunities, as required by civil service regulations. The fact that those employees elected not to continue employment with the state and secured employment with Dr. Hutchinson at his Foundation for Behavioral Research does not invalidate the termination.

Petitioners also claim that, despite the fact that the original grievance involved ten petitioners, the circuit court dealt with the claims of only five of those petitioners. The record established at the hearing contains evidence relating to all ten terminated employees, and the hearing officer, in his opinion, referred to all ten terminated employees by name. In the circuit court's opinion, however, only five petitioners are mentioned by name.

We find no reversible error. It was unnecessary to name each of the petitioners individually, as they were raising the same legal issues in their brief. The claims of each of the petitioners were carefully set out in briefs before the court, and there was no prejudice to any of them by failure to name them specifically.

Affirmed.