MICHIGAN STATE EMPLOYEES ASSOCIATION v CIVIL SERVICE
COMMISSION

Docket No. 73710. Submitted July 18, 1984, at Lansing.—Decided
    March 5, 1985. Leave to appeal applied for.

    Plaintiffs, the Michigan State Employees Association, its presi-
    dent, Ron Holley, and John Lewis, a member of the association,
    brought an action against defendants, the Michigan Civil Ser-
    vice Commission and its individual members, the State Person-
    nel Director, and others, challenging the constitutionality of a
    recently adopted policy of the Civil Service Commission which
    allows the state to contract out for personal services when "it
    has been determined that the use of the classified service is not
    economical or feasible". The policy allows the use of indepen-
    dent contractors when to do so would result in "substantial
    long-term savings to the state when compared with having the
    service performed by classified employees". Plaintiffs alleged
    that this policy is contrary to the intent of Const 1963, art 11,
    § 5, which section establishes the state civil service. Plaintiffs
    also alleged that an amendment to the Employee Relations
    Policy prohibiting any collective-bargaining agreements which
    limit independent contracting violates their due process rights.
    The Ingham Circuit Court, Thomas L. Brown, J., granted
    summary judgment to defendants, holding that plaintiffs had
    failed to state a claim upon which relief could be granted.
    Plaintiffs appeal. *Held:*

    1. The Civil Service Commission is vested with plenary
    powers in its sphere of authority. Furthermore, plaintiffs have
    not shown any harm to the civil service system as a result of
    the new policy. Allowing the Civil Service Commission to
    utilize independent contractors does not violate the Michigan
    Constitution.

    2. There is no constitutional right to collective-bargaining by

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 853.
    73 Am Jur 2d, Summary Judgment § 35.
[2, 4] 15 Am Jur 2d, Civil Service §§ 1, 3, 14.
[3] 15 Am Jur 2d, Civil Service § 57.

civil service employees. The policy does not violate plaintiffs' due process rights.

Affirmed.

DANHOF, C.J., dissented. He would hold that allowing the contracting out of work for purely economic reasons violates the intent of the constitutional establishment of the state civil service. The policy would allow the abolishment of present positions in favor of independent contractors, which contravenes the purpose of abolishing the spoils system and of encouraging career service in state government. He would reverse.

## OPINION OF THE COURT

1. APPEAL — SUMMARY JUDGMENT — FAILURE TO STATE CAUSE OF ACTION.

The Court of Appeals, when reviewing a grant of a summary judgment for failure to state a cause of action upon which relief can be granted, must give the benefit of any reasonable doubt to the party opposing the summary judgment and will affirm only when satisfied that there is no possibility a cause of action can be developed (GCR 1963, 117.2[1]).

2. CIVIL SERVICE — INDEPENDENT CONTRACTORS — SAVINGS TO STATE — CONSTITUTIONAL LAW.

The Michigan Civil Service Commission has plenary power in its sphere of authority and was empowered to establish a rule which allows the utilization of independent contractors to perform personal services where such contracting out would result in substantial long-term savings to the state when compared to having the service performed by classified employees; such a rule does not violate the Michigan Constitution or the intent or purposes of the civil service act (Const 1963, art 11, § 5).

3. CIVIL SERVICE — COLLECTIVE BARGAINING — CONSTITUTIONAL LAW.

Civil service employees have no constitutional right to collective bargaining.

## DISSENT BY DANHOF, C.J.

4. CIVIL SERVICE — INDEPENDENT CONTRACTORS — CONSTITUTIONAL LAW.

*A Civil Service Commission policy which allows for contracting work out when "the use of the classified service is not economical or feasible" conflicts directly with the intent of the constitutional provisions providing for a classified civil service by allowing the abolishment of classified positions in favor of*

*contracting work out; the policy contravenes the intent to do away with the spoils system and to encourage career service in state government and, therefore, is unconstitutional (Const 1963, art 11, § 5).*

*Fraser, Trebilcock, Davis & Foster, P.C.* (by *Michael E. Cavanaugh* and *Brandon W. Zuk),* for plaintiffs.

*Warner, Norcross & Judd* (by *Joseph G. Scoville, Paul T. Sorensen* and *Richard A. Bandstra),* for the Civil Service Commission, the individual Commissioners, the Department of Civil Service, and the State Personnel Director.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Arthur E. D'Hondt,* Assistant Attorney General, for the Department of Transportation, the Department of Management and Budget, and Gerald J. McCarthy.

Before: DANHOF, C.J., and D. E. HOLBROOK, JR., and C. W. SIMON, JR.,* JJ.

PER CURIAM. Plaintiffs appeal as of right from the order that granted defendants' motion for summary judgment pursuant to GCR 1963, 117.2(1). Plaintiffs consist of the Michigan State Employees Association, Ron Holley, the president of MSEA, and John Lewis, who is a member. Ten defendants named include the Michigan Civil Service Commission (CSC);[1] the State Personnel Director, John F. Hueni, Jr.; the Michigan Department of Civil Service; the Michigan Department of Management and Budget; the Michigan Department of

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Each member of the commission has been named individually as well. They are: Michael A. Dively, John F. Dodge, Jr., Walter R. Green and Harriet B. Rotter.

Transportation; and a Deputy Director of the Department of Transportation, Gerald J. McCarthy.

The plaintiffs are challenging the constitutionality of two of the CSC's actions. Plaintiffs contend that allowing the state to contract out for personal services whenever there would be a substantial long-term savings to the state as compared with having the service performed by classified state employees is in violation of Const 1963, art 11, § 5. Additionally, plaintiffs believe that their due process rights have been violated, as the CSC has disregarded the collective-bargaining agreement. On appeal plaintiffs are attempting to show a claim upon which relief can be granted.

Our standard of review requires us to give every benefit of any reasonable doubt to the opposing party and be satisfied that there is no possibility that such claim can arise. *Freeman v Colonial Penn Ins Co,* 138 Mich App 444; 361 NW2d 356 (1984). Plaintiffs' argument is based on Const 1963, art 11, § 5, which provides, *inter alia,* that:

"Sec. 5. The classified state civil service shall consist of all positions in the state service except those filled by popular election, heads of principal departments, members of boards and commissions, the principal executive officer of boards and commissions heading principal departments, employees of courts of record, employees of the legislature, employees of the state institutions of higher education, all persons in the armed forces of the state, eight exempt positions in the office of the governor, and within each principal department, when requested by the department head, two other exempt positions, one of which shall be policy-making. The civil service commission may exempt three additional positions of a policy-making nature within each principal department."

Plaintiffs contend that this requires all positions in the state service to be within the classified civil

service as long as it is feasible. MSEA believes that allowing the state to contract out when "[t]he service would be performed at substantial long-term savings to the state when compared with having the service performed by classified employees" is a violation of art 11, § 5. This clause was just recently added to the list of circumstances in which the CSC could contract for personal services. Procedure for Requesting Use of Contractual Personal Service, § IV D (November 3, 1982). The other reasons that allow for contracting out are that the services are temporary or intermittent, that the services are uncommon to state employment, or that the equipment and materials necessary are not possessed by the state and the cost of procurement would be disproportionate to the contract cost. Plaintiffs believe that this additional provision will result in numerous positions being removed from the civil service classification contrary to the intent of art 11, § 5.

"In interpreting this constitutional amendment, we must examine its historical context and the arguments employed by its proponents. *Civil Service Comm v Auditor General,* 302 Mich 673, 681; 5 NW2d 536 (1942). One of the primary reasons for the civil service amendment was to discontinue the 'spoils system', under which public employment was the reward for political work. Permitting the use of contractual personal services where it is neither feasible nor practical to establish a classified position to perform the required service, subject to Civil Service Commission approval, implements this intention. Approval or disapproval of the personal services remains with the Civil Service Commission." *Detroit Automobile Inter-Insurance Exchange v Comm'r of Ins,* 125 Mich App 702, 711-712; 336 NW2d 860 (1983), *lv den* 418 Mich 865 (1983).

Plaintiffs have not alleged that there was any bad faith or an attempt to reintroduce the "spoils

system" on the part of defendants. Nor have plaintiffs been able to show that even one layoff has been attributed to the new provision. We can find no requirement that all who provide services for the state must be in a civil service position. *Reed v Civil Service Comm,* 301 Mich 137, 158; 3 NW2d 41 (1942). Rather, we find the Civil Service Commission to be vested with plenary power in its sphere of authority. *Council No 11, AFSCME v Civil Service Comm,* 408 Mich 385, 408; 292 NW2d 442 (1980). Article 11, § 5 also provides in part that "[p]ositions shall not be created nor abolished except for reasons of administrative efficiency".

Accordingly, we hold that allowing CSC to utilize independent contractors does not violate the Michigan Constitution. A long-term substantial economic savings to the state does not violate the intent or purposes of the civil service act. In Michigan, before a civil service position may be abolished, good faith must be established by a showing that the position is to be abolished for reasons of efficiency and economy. *Hutchinson v Dep't of Mental Health,* 108 Mich App 725, 731; 310 NW2d 856 (1981), *lv den* 413 Mich 929 (1982). We find no harm to the civil service by virtue of this additional reason to hire independent contractors.

Plaintiffs' final argument alleges that their due process rights are violated by the amendment to the Employee Relations Policy which prohibits any collective-bargaining agreements that limit independent contracting. This argument is meritless. There is no constitutional right to collective bargaining by civil service employees. *Welfare Employees Union v Civil Service Comm,* 28 Mich App 343, 352; 184 NW2d 247 (1970), *lv den* 384 Mich 824 (1971).

As plaintiffs have not alleged any error in the

adoption of this amendment, we assume that all procedures were properly followed. It is clear that the CSC may amend its rules.

"An administrative agency may amend, rescind or suspend its rules and regulations. Agencies may also have discretion to suspend a rule or regulation pending its administrative review. An administrative agency does not exhaust its power to make rules and regulations by having made a particular enactment. It may modify or repeal its rules and regulations, 2 Am Jur 2d, Administrative Law, §§ 309, 310." *International Union of Civil Rights & Social Service Employees v Michigan Civil Service Comm,* 57 Mich App 526, 530; 226 NW2d 550 (1975).

Therefore, we affirm the circuit court's holding. Affirmed.

DANHOF, C.J. *(dissenting).* I respectfully dissent on the issue of contracting out.

At issue here is the constitutionality of defendants' approval of an additional standard for allowing personal service contracts. Const 1963, art 11, § 5, does not specify under what circumstances the state may contract for services rather than having them performed by the classified civil service. It does provide that "[t]he classified state civil service shall consist of all positions in the state service [with certain specified exceptions]". For some time, the commission has been of the view that "positions" includes, in part, employment which it is practical for state employees to perform. Whether the personal services could be performed practically by a state employee was to be decided on the basis of certain criteria relating to the nature of the services, *e.g.,* urgent, temporary, unique, irregular, etc. If the requested services met the commission's definition of "position", the

request was to be denied and arrangements made to establish a classified position. See Civil Service Commission Rule 16.6, prior to the rule change effective November 3, 1982.

Effective October 1, 1979, regulations for requesting contractual personal services provided:

"I. *Policy.* Appointing authorities have the responsibility to use the Classified Service whenever possible. * * * Approval [for use of contractual personal services] will be granted when it is not practical or feasible *to establish a classified position* or positions to perform the service." (Emphasis added.)

Effective November 3, 1982, however, the commission changed the above policy to the following:

"Appointing Authorities may contract for personal service when it has been determined that *the use of the classified service is not economical or feasible* * * * The appointing authority and the Department of Civil Service have the responsibility of minimizing the effect of contracting out on existing employees." (Emphasis added.)

An additional standard for approval was adopted which implemented the new "economic feasibility" policy.

Plaintiffs challenge the constitutionality of this policy and additional standard, contending that cost-savings as a basis for contracting work out violates the letter and intent of Const 1963, art 11, § 5 and paves the way for the dismantling of the civil service system and a return to the spoils system.

Pursuant to the "economic feasibility" standard, the Department of Management and Budget received approval from the commission of a contract for janitorial services in the south tower of the

Ottawa Street Office Building in Lansing. Contracting out was allegedly more cost effective, to the extent of $80,000 per year, than having the work performed by classified civil servants. The department explains that this contract went to a "sheltered workshop", MCL 18.10a(1)(b); MSA 3.516(10a)(1)(b).

Also, the Department of Transportation received approval for the contracting out of pavement marking (except for freeways). The pavement-marking contract and the janitorial-services contract were the first contracts of which plaintiffs were cognizant approved pursuant to the commission's new policy.

As noted, commission policy previously provided for approval of contractual personal services when it was "not *practical* or feasible *to establish* a classified position". The new rule, however, allows contracting out "when it has been determined that *the use* of the classified service is not *economical* or feasible". The clear import of this new policy is that contractual services may be used for jobs presently performed by civil service employees, as is the case here. This represents a substantial change in policy.

The majority opinion cites and relies upon two decisions of this Court: *DAIIE v Comm'r of Ins,* 125 Mich App 702; 336 NW2d 860 (1983), and *Hutchinson v Dep't of Mental Health,* 108 Mich App 725; 310 NW2d 856 (1981), *lv den* 413 Mich 925 (1982). Neither case, however, supports the action taken in the instant case. Nor, indeed, is this action authorized by Const 1963, art 11, § 5.

In *DAIIE,* the issue was whether MCL 500.2030(3); MSA 24.12030(3), which required the Commissioner of Insurance to designate a hearing officer for resolution of certain disputes, unconstitutionally infringed upon the authority of the Civil

Service Commission to classify the position of "independent" hearing officer and to fill such position on the basis of merit and competitive examination. This Court held that so long as the Civil Service Commission approved the disbursements for the hearing officers, there was nothing to prohibit "the use of contractual personal services where it is neither feasible nor practical *to establish* a classified position to perform the required service". (Emphasis added.) 125 Mich App 712.

Thus, *DAIIE* did not involve the approval to contract for personal services where the services are presently being performed by civil service employees. Rather, the services in *DAIIE* were temporary in that an officer was appointed for each hearing conducted pursuant to MCL 500.2029; MSA 24.12029, dealing with unfair trade practices, so that in this sense each appointment could be said to involve a "new" service. In short, the contracting out was permitted in lieu of *establishing* a classified position.

Moreover, in *Hutchinson, supra,* the Department of Mental Health *abolished* research positions for reasons of administrative efficiency. This was done pursuant to specific constitutional authority. The operative portion of Const 1963, art 11, § 5, provides in part:

"The appointing authorities may create or abolish positions for reasons of administrative efficiency without the approval of the commission. Positions shall not be created nor abolished except for reasons of administrative efficiency. Any employee considering himself aggrieved by the abolition or creation of a position shall have a right of appeal to the commission through established grievance procedures."

However, as the *Hutchinson* Court specifically stated in construing the constitutional language,

the department's action was proper because "the
duties of the positions terminated were not trans-
ferred to *any* other persons". (Emphasis added.)
108 Mich App 731-732. Accordingly, the holding in
*Hutchinson* is ostensibly inapposite to the instant
situation where the duties were assigned to other
persons, *i.e.*, where they were the subject of a
personal service contract. Indeed, if anything,
*Hutchinson* intimates that the actions taken in the
instant case were improper.

That it was crucial in *Hutchinson* that the
duties terminated not be transferred to any other
persons is further evidenced by the fact that this
construction gives effect to the clear language of
the above constitutional provision. Black's Law
Dictionary, 4th ed, defines "abolish" as "[t]o do
away with *wholly;* to annul * * * To *dispense*
with." (Emphasis added.) To transfer duties from a
classified position to a private contractor is not "to
do away with *wholly"* or "to dispense with". And a
position is not "created" by contracting for the
services. This is not to say that the authorities or
the commission may never contract for services. It
is to say, however, that a classified position may
not be abolished in favor of contracting the work
out.

Here, the majority opinion attempts to bridge
the gap between *DAIIE, supra,* and *Hutchinson,
supra,* by allowing the abolishment of the classified
positions in question, with the subsequent con-
tracting out of these services. This step effectively
permits, in theory and principle, the dismantling
of the civil service whenever such action can be
deemed cost effective. While the motive here was
certainly laudable—not only to reduce the cost to
the state of certain services, but also to contract
with a "sheltered workshop", the principle estab-
lished conflicts directly with the intent of the

constitutional provisions providing for a classified civil service.

As a practical matter, one must wonder where the line is to be drawn; that is, if it were established that a private company providing security services could more economically *(or* feasibly) perform some of the duties presently performed by the State Police, would the commission be justified in abolishing State Police positions and contracting for these services? The principle established by the majority would permit such. And this question could be asked and answered affirmatively regarding many presently classified positions. This was surely not the intent embodied in article 11, § 5.

Furthermore, the majority opinion places reliance on the fact that the civil service was created to avoid the spoils system and that there was no allegation "of an attempt to reintroduce" that system here. The key concept, however, is "system", *i.e.,* that the civil service was created as a comprehensive system to replace any type of spoils system. If the intent were to analyze each situation on a case-by-case basis to determine whether the "spoils system" was at work, the creation of a civil service would not have been necessary. I do not find this rationale satisfactory. The civil service was obviously designed to obviate the problem of political patronage without having to look at each individual case and ascertain whether favoritism was involved.

Along these same lines, it is noteworthy that the majority opinion makes no mention of the fact that the Convention Comment to art 11, § 5 also lists as a purpose the encouragement and fostering of "a career service in state government", presumably to attract qualified personnel who would be interested in state service because there was some security and because the system was designed to

provide jobs based upon the merit system, not the buddy system. Allowing the contracting out of presently performed services cuts directly against these purposes. There is no encouragement to enter into a *"career* service in state government", if the position may be abolished and the work contracted out. The requirement to minimize the effects on existing employees contained in Rule 16.6 does not alter this result.

It also seems incongruous to vest the commission with authority to fix rates of compensation and to approve or disapprove disbursements for all personal services, including the authority to rescind and defer increases considered and proposed by the Legislature, see *Michigan Ass'n of Governmental Employees v Civil Service Comm,* 125 Mich App 180, 187; 336 NW2d 463 (1983), *lv den* 417 Mich 1095 (1983), and then allow the commission to approve personal service contracts when performance of the job by the civil service has become uneconomical. First, it cannot reasonably be denied that part of encouraging and fostering "a career service in the state government" is the offering of economic incentives. Consequently, it is to be expected that the civil service will not always be the most economical in performing certain duties. This is part of the cost of continuing "Michigan's national leadership among states in public personnel practice". See Const 1963, art 11, § 5, Convention Comment. Second, however, where there is a need to implement cost-effective measures and insure that work is performed as economically as possible, it should be exercised in fixing rates of compensation, not in the manner done here.

Finally, I recognize, as the majority opinion notes, that the commission is "vested with plenary

powers in its sphere of authority". But while the commission has plenary powers, it still derives such authority from the Constitution in light of the purpose of the applicable provisions. To allow the contracting out of work presently performed by civil service employees contravenes the policy of creating a system to do away with the spoils system and to encourage *career* service in state government.

I would hold that the commission's new "economic feasibility" policy, as embodied and implemented in Civil Service Commission Rule 16.6, is unconstitutional.

I would reverse the lower court.