727 A.2d 369

**Mary HAUB, et al.**

v.

**MONTGOMERY COUNTY, Maryland.**

**No. 132, Sept. Term, 1996.**

Court of Appeals of Maryland.

April 9, 1999.

William W. Thompson, II (Zwerdling, Paul, Leibig, Kahn, Thompson & Wolly, P.C., on brief), Washington, DC, for appellants.

Eward B. Lattner, Associate County Atty., (Charles W. Thompson. Jr., County Atty.; Linda B. Thill, Chief Counsel, Rockville), on brief for appellee.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and ROBERT L. KARWACKI (Retired, specially assigned), JJ.

ELDRIDGE, Judge.

This case involves an effort by some Montgomery County merit system employees to obtain administrative and judicial review of provisions in the County's operating budget for fiscal year 1996, as proposed by the County Executive and enacted by the County Council, which "privatized" certain county government functions.

### I.

Montgomery County is a home rule county, having adopted a charter pursuant to Article XI–A of the Maryland Constitution. As we have pointed out, "[a] home rule county charter is a local constitution." *Bd. of Election Laws v. Talbot County,* 316 Md. 332, 341, 558 A.2d 724, 728 (1988). Furthermore, under Article XI–A, § 1, of the Maryland Constitution, it is appropriate for a county home rule charter to contain a "system for budgeting and appropriating revenues," *Annapolis v. Anne Arundel County,* 347 Md. 1, 15, 698 A.2d 523, 530 (1997).

Article 3 of the Montgomery County Charter sets forth the budgetary process for Montgomery County. The Montgomery County budget system differs somewhat from the type of executive budget systems in several other charter counties and at the state government level.[1] Under § 302 of the Montgomery County Charter, the County Executive is required to "submit to the [County] Council, not later than March 15 of each year, comprehensive six-year programs for public services and fiscal policy." The County Council, by a majority vote, is to approve, or modify and approve, these six year programs.

Section 303 of the Charter provides, *inter alia,* that the County Executive by March 15th of each year must submit to the County Council a proposed operating budget for the

---

1. For a discussion of the executive budget system in effect at the state level and in some charter counties, *see Judy v. Schaefer,* 331 Md. 239, 245–250, 627 A.2d 1039, 1042–1045 (1993), and cases there cited.

ensuing fiscal year, "including recommended expenditures and revenues . . . ." The proposed operating budget "shall be consistent with the six-year programs."

Section 305 of the Charter authorizes the County Council to "add to, delete from, increase or decrease any appropriation item in the operating . . . budget." The same section goes on to require that the "Council shall approve each budget, as amended, and appropriate the funds therefor not later than June 1 of the year in which it is submitted." Section 305 also mandates that the County Council, by June 30th of each year, make tax levies necessary to finance the budget for each year.

Under § 306 of the Charter, the County Council, upon approval of the budget, must deliver it to the County Executive who, within ten days after delivery, "may disapprove or reduce any item contained in it." If the Executive vetoes or reduces any item, the budget is returned to the County Council which has until June 30th of each year to override the Executive's action. With certain exceptions, a two-thirds vote of the Council is required to override the Executive's veto or reduction.

Article 4 of the Montgomery County Charter concerns the merit system. Section 401 of the Charter provides that the County Council "shall prescribe by law a merit system for all officers and employees of the County government" with specified exceptions. Section 401 goes on to state that any law which "designates a position as a non-merit position" must be enacted by a two-thirds vote of the Council. In addition, § 401 provides that

"[o]fficers and employees subject to a collective bargaining agreement may be excluded from provisions of law governing the merit system only to the extent that the applicability of those provisions is made subject to collective bargaining by legislation enacted under Section 510, Section 510A, or Section 511 of this Charter [relating to collective bargaining for county employees]."

Section 401 also states that

"[t]he merit system shall provide the means to recruit, select, develop, and maintain an effective, nonpartisan, and

responsive work force with personnel actions based on demonstrated merit and fitness."

Section 402 of the Charter requires the County Executive to adopt personnel regulations for the administration and implementation of the merit system law. Section 403 creates a "Merit System Protection Board," and § 404 provides that a merit system employee

"who is removed, demoted, or suspended shall have, as a matter of right, an opportunity for a hearing before the Merit System Protection Board...."

Section 404 further provides that the "decisions of the Board ... shall not be subject to review except by a court of competent jurisdiction." The statutory provisions implementing Article 4 of the Charter more specifically provide that final decisions of the Merit System Protection Board are subject to judicial review in the Circuit Court for Montgomery County under the judicial review standards of the State Administrative Procedure Act, Maryland Code (1984, 1995 Repl.Vol.), § 10–222 of the State Government Article, and that decisions of the circuit court in such cases may be appealed to the Court of Special Appeals. *See* § 33–15 of the Montgomery County Code.

The Montgomery County Code provisions implementing Article 4 of the Charter provide that "[a]ny merit system employee ... who has been notified of impending removal, demotion or suspension shall be entitled to file an appeal to the" Merit System Protection Board and receive a hearing. *See* § 33–12(a) of the Montgomery County Code. Section 33–12(b) of the Montgomery County Code appears to grant rights in addition to those set forth in Article 4 of the Charter, stating in relevant part as follows:

"(b) *Grievances.* A grievance is a formal complaint arising out of a misunderstanding or disagreement between a merit system employee and supervisor with reference to a term or condition of employment. The determination of the board as to what constitutes a term or condition of employment shall be final. Grievances do not include the following:

Classification allocations, except due process violations; failure to reemploy a probationary employee; or other employment matters for which another forum is available to provide relief or the board determines are not suitable matters for the grievance resolution process.  * * * "

The Montgomery County personnel regulations adopted by the County Executive, in § 29-2, also provide for appeals to the Merit System Protection Board when a merit system employee has a "grievance" concerning "a term or condition of employment." [2]

## II.

In March 1995, the County Executive of Montgomery County, in submitting to the County Council the proposed operating "Budget and Public Services Program" for fiscal year 1996, recommended contracting out and privatizing certain

---

**2.** Section 29-2 of the personnel regulations states as follows:

"A grievance is a formal written complaint by an employee arising out of a misunderstanding or disagreement between a merit system employee and supervisor, which expresses the employee's dissatisfaction concerning a term or condition of employment or treatment by management, supervisors, or other employees. A grievance may be filed if an employee is adversely affected by an alleged:

(a) Violation, misinterpretation or improper application of established laws, rules, regulations, procedures or policies;

(b) Improper or unfair act by a supervisor or other employee, which may include coercion, restraint, reprisal, harassment or intimidation;

(c) Improper, inequitable or unfair act in the administration of the merit system, which may include promotional opportunities, selection for training, duty assignments, work schedules, involuntary transfers and reductions-in-force;

(d) Improper, inequitable or unfair application of the compensation policy and employee benefits, which may include salary, pay differentials, overtime pay, leave, insurance, retirement and holidays;

(e) Disciplinary action, which includes written reprimands, forfeiture of annual leave or compensatory time and within-grade reductions; or

(f) Improper or unfair resignation or termination of employment; *Special Note.* Demotions, suspensions, terminations and dismissals affecting merit system employees may be appealed directly to the Merit System Protection Board under Section 30 of these Regulations.  * * * "

county government functions and services previously performed by county employees.[3] In April 1995, 156 county merit system employees received notices that positions in their various job classifications or occupational classes were targeted for abolition based upon the proposed budget for the next fiscal year. These programs and services would not be terminated if the proposed budget was passed; rather, the functions would no longer be provided by county merit system employees. Receipt of a "notice of intent letter," however, did not necessarily mean that a particular employee's position would be abolished. The county administrative procedure regulations require that notices be provided to all employees in the targeted occupational class even if only one position in that class may be affected.

On May 2, 1995, the merit system employees who received the "notice of intent letters" filed complaints with the Montgomery County Office of Human Resources. The relief requested by the employees was that

"the privatization or contracting out of these programs, functions and services be withdrawn and rescinded; that these programs, functions and services continue to be performed—if at all—by County merit system employees; and that all merit system employees adversely affected by any of the privatization or contracting be restored and made

---

3. The County Executive's proposed budget recommended that the following programs be contracted out: (1) HHS Programs including Respite Care, Lawrence Court Halfway House, Abused Person Shelter Operation, Senior Dental Services, Child Health Services, Therapeutic Nursery, County Support to WIC (Women, Infants, and Children), Health Room Technicians, Head Start Health Component, Hearing and Vision Screening; (2) Commission for Women programs including Counseling Services; (3) Solid Waste's Management of Public Unloading Facility at Transfer Station; (4) Recreation's Community Center cleaning; and (5) Corrections' Provision of food service at detention facilities. The proposed budget also recommended that the following County Conservation programs be privatized: (1) HHS programs including Legal Pro Bono Services and the Conservation Corps; (2) Fire Service Volunteers Program Station 21; (3) Human Relations' Provision of cultural awareness training to private sector; and (4) Government Services Center/TESS Center's Legal Assistance for tax preparation.

whole for any losses in pay or other remuneration, benefits, or adverse effects on any terms or conditions of employment."

The budget and public services programs, including the privatizing/contracting out provisions, were approved by the County Council and went into effect on July 1, 1995, prior to a decision on the employees' complaints by the Office of Human Resources.

In a decision rendered on July 7, 1995, by the Labor/Employee Relations Manager of the Office of Human Resources, and reiterated in August 1995 by the Director of the Office of Human Resources, the Office decided that the complaints were not grievable under the Charter, the merit system ordinances and the personnel regulations. The Office pointed out that the employees "seek to contest the right of the County to contract out/privatize certain government functions. More specifically, [they seek] that the contracting out/privatization of certain services and programs recommended by the County Executive in the FY 1996 General County Government Budget *and adopted by the County Council* be 'withdrawn and rescinded.'" (Emphasis added). The Office went on to state that the employees involved are covered by collective bargaining agreements, that if the complaints were grievable the exclusive forum would be the collective bargaining contract grievance procedure, but that, as the employees acknowledged, "contracting out/privatization of government work is not negotiable under the County Collective Bargaining Law." The Office took the position that employees covered by a collective bargaining agreement cannot use the merit system grievance procedure to complain about matters which are covered by the collective bargaining law and deemed management functions and thus not grievable under the collective bargaining law.

The Office also rejected the employees' reliance on § 401 of the Montgomery County Charter, saying:

"The [employees] argue that by operation of Charter Section 401 the subject matter of their complaint is properly

grieved, as the 'involuntary removal of government work and service from Merit System employees presents perhaps the most fundamental controversy over terms and conditions of Merit System employment . . .' Moreover, [the employees] have construed the language of Section 401 to mean that to 'recruit, select, develop *and maintain* an effective, non-partisan, and responsive work force with personnel actions based on demonstrated merit and fitness,' permits employees to grieve management decisions which determine the budget, mission and services to be rendered by the government. . . .

"Contrary to the [employees'] position, maintaining an effective, non-partisan and responsive work force is achieved by those merit system actions which result in the evaluation, training, compensation, promotion, demotion, transfer, separation, etc. of employees. It is certain aspects of these actions that are the conditions of employment to which employees may grieve and obtain relief, and not the decision as to what and how the services will be performed.

\* \* \*

"The [employees] are incorrect in maintaining that removal of government work and service is a condition of employment to which there is some employee right. The authority for the allocation of resources funded by tax revenues are established by Charter and determined as recommended by the County Executive and approved by the County Council.

\* \* \*

"The opportunity to grieve and obtain relief through the [employees'] complaints would result in the undoing of appropriation decisions made by the County Executive and approved by the County Council contrary to their Charter authority. These decisions are fundamental to the operation and administration of the County Government."

The employees appealed to the Merit System Protection Board which on January 23, 1996, sustained the decision of the Office of Human Resources. The Board agreed with the Office that the complaints were not grievable under the procedure set forth in the merit system ordinances and regulations

because the subject was covered by the collective bargaining law and was a non-grievable management function under that law. The Board also held that the matter was not a grievable employment condition under the merit system law and regulations but was the prerogative of the County Executive and County Council under the budget provisions of the County Charter, and particularly under §§ 302 and 305 of the Charter.

Thereafter, the employees filed in the Circuit Court for Montgomery County the present action for judicial review of the Merit System Protection Board's decision. At the conclusion of the hearing before the circuit court, the court rendered an oral opinion upholding the decision of the Board. The court initially addressed a question raised by the court during the hearing, namely whether the grievances were premature because there had been no showing that any employees had yet been adversely affected by the enacted budget. After pointing out that this question was neither decided nor raised at the administrative level, and that, therefore, the issue might not properly be before the court, the circuit court nevertheless held that the grievances were not premature. The court went on to disagree with the County's position and the Board's holding that the matter was not grievable under the merit system law because it was dealt with and deemed a management function under the collective bargaining law. The court, however, agreed with the alternative ground for the administrative decision that the contracting out and privatizing decisions were not grievable under the merit system law and the Charter but constituted "legal" actions by "the elected officials." The circuit court continued:

"The Court does not believe, therefore, that it is a grievable issue. In the scheme of things, and the way the Court interprets they were intended, the ultimate decider on the overall policy within the county is not with any appointed board, but it is with the elected officials of the county.

"And within the county charter, there are provisions for the adoption and implementation of budgets and programs for the county, and the Court believes that they are within

the prerogative of the county elected officials to consider and enact and implement without oversight by any board including the Merit Systems Protection Board."

The court entered a written order on August 28, 1996, affirming the decision of the Merit System Protection Board.

The employees appealed to the Court of Special Appeals. Prior to oral argument in the intermediate appellate court, this Court issued a writ of certiorari. *Haub v. Montgomery County*, 344 Md. 568, 688 A.2d 447 (1997).

### III.

The employees argue that contracting out and privatization are grievable under the merit system grievance procedures primarily because they concern terms or conditions of employment and therefore fall within the definition of grievance contained in § 33–12(b) of the Montgomery County Code. The employees advocate a broad interpretation of the phrase "terms and conditions," contending that it is comprehensive enough to include decisions to contract out or privatize public employees' work. They rely on several cases dealing with federal labor law. In addition, the employees urge that the Charter's language "that '[t]he merit system shall provide the means to ... maintain an effective, nonpartisan and responsive work force ...'" is a "fundamental mandate from the citizens of Montgomery County [which] requires that the county work force be 'preserved from failure or decline' within the [scope] of the Merit System." (Appellants' reply brief at 10–11). The employees maintain that "[t]he Merit System's integrity is put squarely at issue in this controversy" because the Merit System Protection Board exists "'to assure that employees are treated fairly, are treated in a manner that is consistent with laws, rules, regulations ..., [and] that we not have the spoils system....'" (Appellants' opening brief at 10, quoting the circuit court). The employees argue that the merit system is designed to prevent public policy formation and implementation by outsiders. They claim that if the employees are not allowed to grieve contracting out and privatizing decisions, it would in essence allow "the 'democrati-

cally instituted' Merit System to be effectively disowned by the very government administration which is bound by the Charter and Code to protect and nurture it." (Appellants' reply brief at 10).

' Montgomery County argues that significant policy considerations require that contracting out/privatizing decisions be exempt from the merit system grievance procedure. Both the employees and the County agree that the grievances are not cognizable under the collective bargaining agreement or collective bargaining laws because Montgomery County's collective bargaining law has expressly excluded collective negotiation on contracting out and privatizing.[4] The County argues that "[w]here the matter may not be grieved because it is expressly committed to the management's discretion under the collective bargaining statute, it is not a 'term or condition of employment' grievable under the merit system." (Appellee's brief at 11). The County maintains that

> "only those merit system actions which result in the evaluation, training, compensation, promotion, demotion, transfer, separation, (and similar actions) of employees may be challenged. It is certain aspects of these actions that comprise the terms and conditions of employment which remain subject to the grievance process and not the decision as to what and how the services will be performed." (Appellee's brief at 24–25).

According to the County, the decision as to whether to contract out or privatize a function is "an important policy decision which is committed to [a governmental employer's] discretion" and is only "reviewable in the political arena, not in the confines of collective bargaining or grievance resolution.

---

**4.** Montgomery County Code § 33–107(b)(17) states that the collective bargaining article and "any agreement made under it shall not impair the right and responsibility of the employer to ... [c]reate, alter, combine, contract out, or abolish any job classification, department, operation, unit, or other division or service, provided that no contracting of work which will displace employees may be undertaken by the employer unless ninety (90) days prior to signing the contract, or such other date of notice as agreed by the parties, written notice has been given to the certified representative."

This is especially the case where the governing public sector collective bargaining statute expressly makes the decision to contract out work a non-bargainable matter." (Appellee's brief at 21). The County insists that, to allow these decisions to be either arbitrable in the collective bargaining context or grievable under the merit system laws, would corrupt the democratic process. "Management rights in the public sector are designed to ensure that the government's responsibility to make and implement public policy is properly decided by the political process...." (Appellee's brief at 18).

Furthermore, the County asserts that the request by the employees that the privatization be withdrawn and rescinded "is beyond the scope of relief the [Merit System Protection] Board may order as envisioned by the merit system law." (Appellee's brief at 27). The County argues that the employees could challenge an adverse personnel action such as suspension, demotion, or dismissal but that they are not able to seek relief by "undoing [the] appropriation decisions made by the County Executive and approved by the County Council. These decisions are fundamental to the operation and administration of the County Government." (Appellee's brief at 28).

The employees counter by arguing that the merit system law gives broad remedial authority to the Merit System Protection Board. They cite sections of the Montgomery County Code which give the Board authority to order corrective procedures as to any management procedure,[5] to order relief as it may be deemed appropriate,[6] and to rectify improper personnel actions.[7] Because the County Code delineates

5. Section 33–14(c)(8) of the Montgomery County Code states that the board shall have authority to "[o]rder corrective measures as to any management procedure adversely affecting employee pay, status, work conditions, leave or morale."

6. Section 33–14(c)(10) grants the Board authority to "[o]rder such other and further relief as may be deemed appropriate consistent with the charter and laws of Montgomery County."

7. Section 33–7(a) states that the "remedial and enforcement powers of the board granted herein shall be fully exercised by the board as needed to rectify personnel actions found to be improper."

the Board's authority in such broad terms, the employees argue, the Board is "clearly authorized to ensure that the County's budget expenditures conform to the Charter and the Merit System Law." (Appellants' reply brief at 16).

## IV.

At the outset, it is important to emphasize what is and what is not before us in the present case. Although the employees' complaints, when initially made, concerned proposed action by the County Executive, the complaints soon became challenges to the validity of enacted legislation. As recognized by the Office of Human Resources, the Merit System Protection Board, and the circuit court, the County Council adopted the challenged privatizing/contracting out provisions, and those provisions went into effect as part of the enacted budget and programs for public services on July 1, 1995.

Accordingly, this case does not involve a challenge to what is entirely a management or agency or executive decision to privatize or contract out certain functions previously performed by employees in the executive branch of the Montgomery County government. Instead, the employees are necessarily in the position of attacking the validity of provisions in a local statute. The relief which they seek, namely that the privatizing "or contracting out of these programs, functions and services be withdrawn and rescinded," can be granted only if parts of the enacted budget and programs for public services for fiscal year 1996 are void.

Of course, a legislative enactment by a legislative body such as the County Council of Montgomery County is invalid only if it is in conflict with higher law. *See City of Baltimore v. State*, 281 Md. 217, 230, 378 A.2d 1326, 1333 (1977) ("Absent some constitutional infirmity, a court has no power to declare void an act of the [legislature]"). The local enactment would have to be inconsistent with the Montgomery County Charter, or with state or federal law, or with the state or federal constitutions, in order for it to be held invalid. The Office of Human Resources and the Merit System Protective Board

could have given the employees the requested relief only upon a holding that portions of the budget and programs for public services for fiscal year 1996 violated the Montgomery County Charter, or state or federal law, or the state or federal constitutions. *See Holiday v. Anne Arundel,* 349 Md. 190, 199–200, 707 A.2d 829, 834 (1998); *Insurance Commissioner v. Equitable,* 339 Md. 596, 616–617, 664 A.2d 862, 872–873 (1995). *See also Md. Classified Employees v. State,* 346 Md. 1, 694 A.2d 937 (1997) (involving a state legislative enactment privatizing certain government functions which was challenged by state employees on the grounds that the enactment violated the state and federal constitutions).

■ Consequently, some of the matters which have been argued by the parties are not actually presented by the facts of the case and need not be reached by us. For example, the arguments concerning the relationship between the collective bargaining ordinances and contracts and the merit system ordinances and regulations, with regard to "grievances" over contracting out and privatizing work, might be pertinent if the case involved solely an executive branch decision to contract out or privatize certain functions. When, however, the decision to contract out or privatize specific functions is made as a later legislative enactment, by the same legislative body which earlier had enacted the collective bargaining ordinances and merit system ordinances, the later enactment prevails to the extent of any inconsistency. *See, e.g., State v. Ghajari,* 346 Md. 101, 115, 695 A.2d 143, 150 (1997) (" 'if two statutes contain an irreconcilable conflict, the statute whose relevant substantive provisions were enacted most recently may impliedly repeal any conflicting provision of the earlier statute' "); *Farmers & Merchants Bank of Hagerstown v. Schlossberg,* 306 Md. 48, 61, 507 A.2d 172, 178–179 (1986) ("the statute whose relevant substantive provisions were enacted most recently [must] be held to have repealed by implication any conflicting provisions of the earlier statute"); *Carroll County Educ. Ass'n, Inc. v. Board of Educ. of Carroll County,* 294 Md. 144, 152, 448 A.2d 345, 349 (1982) ("Of course, to the extent the provisions of the two statutes are irreconcilable, the

later statute governs"); *Automobile Acceptance Corp. v. Universal C.I.T. Credit Corp.*, 216 Md. 344, 353, 139 A.2d 683, 687 (1958) ("If there were any conflict between the two statutes, ... [the later] would prevail by its being more recent in time"); *Leitch v. Gaither*, 151 Md. 167, 175, 134 A. 317, 319 (1926) ("If that conflict is irreconcilable, the latest statute controls").

Similarly, the issues of whether a merit system employee's complaint about contracting out work concerns "a term or condition of employment" and constitutes a "grievance" within the meaning of § 33–12(b) of the Montgomery County Code and § 29–2 of the personnel regulations are not presented by this case. Even assuming *arguendo* that such a complaint might have constituted a proper "grievance" to be adjudicated by the Merit System Protection Board if the decision to contract out work were entirely an executive determination,[8] once the contracting out decision became embodied in a later legislative enactment, the later enactment would control to the extent of any inconsistency with an earlier enacted section of the code. The specific provisions of the later enacted budget, stating that specified work be contracted out or privatized, would control over the general and earlier enacted provisions of § 33–12(b) and the regulations thereunder. With respect to the particular work which the legislatively enacted budget required to be contracted out or privatized, the Board could not "rescind" that legislative mandate absent a holding that the pertinent budget provisions were invalid under higher law.

The same is true with respect to the employees' arguments that the powers of the Merit System Protection Board are broad. Regardless of how broad those powers might be, they are not broad enough to permit the county administrative agency to repeal or ignore valid law. Under the Montgomery

---

**8.** *But cf. Ball v. Board of Trustees of State Colleges*, 251 Md. 685, 692, 248 A.2d 650, 654 (1968) ("Authorities universally affirm the proposition that the executive departments of government may lay off a merit system employee by abolishing the position which he holds, with the limitation that it be for a bona fide reason and not a subterfuge to evade the merit system laws").

County Charter and Article XI–A, § 3, of the Maryland Constitution, it is the .County Council, and not the Board, which has "full power to enact local laws" for Montgomery County. *See, e.g., Board v. Smallwood,* 327 Md. 220, 235–236, 608 A.2d 1222, 1229–1230 (1992); *Bd. of Election Laws v. Talbot County, supra,* 316 Md. at 348–349, 558 A.2d at 732; *Griffith v. Wakefield,* 298 Md. 381, 384–386, 470 A.2d 345, 347– 348 (1984); *Cheeks v. Cedlair Corp.,* 287 Md. 595, 612–613, 415 A.2d 255, 264 (1980).

Therefore, the employees' complaints about the privatizing and contracting out provisions of the enacted budget and programs for public services, which became law on July 1, 1995, could not be a proper basis for "grievances" to be resolved by the Merit System Protection Board unless, at the very least, those provisions are invalid under higher law.

The employees have made no argument that the challenged privatizing/contracting out provisions violate either the state constitution or the federal constitution or state law or federal law. The employees have at no time argued or suggested that the provisions violate Article 3 of the Montgomery County Charter which sets forth the budget and appropriation system for Montgomery County.[9]

---

**9.**  Under Article III, § 52, of the Maryland Constitution, which sets forth the executive budget system for the state government, we have held that the Legislature may not "legislate generally" in the annual budget bill and may not amend or repeal substantive legislation in that budget bill. The reason for this is that Article III, § 52, very much limits the Legislature's authority to change the Governor's budget and provides that the budget bill becomes law as soon as it is passed by both houses of the General Assembly. Thus, it is not subject to the Governor's veto. *See generally Bayne v. Secretary of State,* 283 Md. 560, 574, 392 A.2d 67, 74 (1978); *63 Opinions of the Attorney General* 60 (1978); *37 Opinions of the Attorney General* 139 (1952).

As earlier discussed, Montgomery County does not have an executive budget system patterned upon the state system under Article III, § 52, of the Maryland Constitution. Instead, under Article 3 of the Montgomery County Charter, the County Council had broad authority to amend the budget. Moreover, the budget, as amended by the County Council, *is subject to the item veto of the County Executive.* Consequently, Article 3 of the Montgomery County Charter would not appear to contain the same implicit prohibition against general legislation in the

The only sections of the Montgomery County Charter which the employees have relied upon, and the only charter sections which they claim have been violated by the privatizing and contracting out provisions, are §§ 216 and 401 of the Charter relating to the merit system. Section 216, concerning the executive branch of the county government, states:

"**Sec. 216. Appointment of Other Employees of the Executive Branch.**

"All employees of the Executive Branch other than those specifically provided for in this Charter shall be appointed and removed and their salaries shall be fixed under the merit system by the heads of the several departments, offices and agencies of the County."

The language of § 401 relied on by the employees is as follows:

"The merit system shall provide the means to recruit, select, develop, and maintain an effective, nonpartisan, and responsive work force with personnel actions based on demonstrated merit and fitness."

■ It is clear that the privatizing and contracting out provisions which were enacted into law effective July 1, 1995, do not violate the above-quoted language of §§ 216 and 401 of the Montgomery County Charter relating to the merit system. This charter language, when read in the context of the entire Montgomery County Charter, does not even require that all

---

budget which is contained in Article III, § 52, of the Maryland Constitution. *See City of Baltimore v. State*, 281 Md. 217, 228–229, 378 A.2d 1326, 1332 (1977) (state constitutional prohibition against general legislation in the annual budget bill is not applicable to supplementary appropriation bills).

Moreover, even under the state executive budget system, the deletion of employee positions and an appropriation for contracting out functions are proper provisions in the annual state budget bill. *See, e.g., Workers' Compensation Comm'n v. Driver*, 336 Md. 105, 647 A.2d 96 (1994); *cert. denied*, 513 U.S. 1113, 115 S.Ct. 906, 130 L.Ed.2d 789 (1995); *Hopper v. Jones*, 178 Md. 429, 13 A.2d 621 (1940).

We need not, however, explore this issue further because, as pointed out in the text above, the employees have not argued that the privatizing/contracting out provisions violate Article 3 of the Montgomery County Charter.

Montgomery County government employees, except those holding positions designated in the Charter as non-merit system positions, be merit system employees. As discussed earlier in this opinion, § 401 of the Charter expressly authorizes the County Council to designate additional positions as non-merit system positions.[10]

Moreover, §§ 216 and 401 of the Charter relate to whether county government *employees* should be merit system or non-merit system. These sections plainly do not deal with *private employees* or contracting out work to *non-government independent contractors.* The creation of a merit system for government employees, and a preference that government employees be in the merit system, does not preclude the privatization or contracting out of the work to non-government entities. *See, e.g., Ball v. Board of Trustees of State Colleges,* 251 Md. 685, 692, 248 A.2d 650, 654 (1968); *Moore v. State Dept. of Transp.,* 875 P.2d 765, 771 (Alaska 1994) (state constitutional merit system provisions are not a bar to privatization); *Cal. State Employees' Ass'n v. State,* 199 Cal.App.3d 840, 245 Cal.Rptr. 232 (1988); *UAW v. Civil Service Comm.,* 223 Mich.App. 403, 566 N.W.2d 57, *appeal denied,* 572 N.W.2d 10 (1997); *Michigan State Employees v. Civil Service Com'n,* 141 Mich.App. 288, 367 N.W.2d 850 (1985); *Nassau Educ. Chap. v. Great Neck U. Free School District,* 85 A.D.2d 733, 445 N.Y.S.2d 812 (1981) *aff'd,* 57 N.Y.2d 658, 454 N.Y.S.2d 67, 439 N.E.2d 876 (1982); *Teamsters Local 117 v. King County,* 76 Wash.App. 18, 881 P.2d 1059 (1994).[11]

---

**10.** Section 401 states in pertinent part as follows:

"Any law which creates a new department, principal office, or agency, or designates a position as a non-merit position, requires the affirmative vote of six Councilmembers for enactment. Any law which repeals the designation of a position as a non-merit position requires the affirmative vote of five Councilmembers for enactment.

"Officers and employees subject to a collective bargaining agreement may be excluded from provisions of law governing the merit system only to the extent that the applicability of those provisions is made subject to collective bargaining by legislation enacted under Section 510, Section 510A, or Section 511 of this Charter."

**11.** A minority view on this issue appears to have been adopted by the Supreme Court of Colorado. *Colorado Ass'n of Public Employees v. Department of Highways,* 809 P.2d 988 (Colo.1991).

In accord with the clear majority of cases throughout the country, we do not believe that general provisions establishing a merit system for government employees, such as those contained in the Montgomery County Charter, preclude the government from privatizing or contracting out to non-government entities specific government functions. Therefore, the privatizing/contracting out provisions of the Montgomery County budget and programs for public services which became effective on July 1, 1995, do not violate the Montgomery County Charter. Accordingly, the Merit System Protection Board properly held that the employees' complaints about those provisions furnished no basis for action by the Board.

*JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. APPELLANTS TO PAY COSTS.*